1  RIDOUT & LYON, LLP
   Christopher P. Ridout, Esq. (SBN 143931)
2      E-mail: c.ridout@ridoutlyonlaw.com
   Caleb Marker, Esq. (SBN 269721)
3      E-mail c.marker@ridoutlyonlaw.com
   555 Ocean Boulevard, Suite 500
4  Long Beach, CA 90802
   (562) 216-7380
5  (562) 216-7385 Facsimile

6  *Local Counsel for Plaintiffs*

7  (Trial Counsel Listed On Signature Page)

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10
   PHILLIP FLORES and DARAH DOUNG,        Case No.
11 individually and on behalf of all similarly situated
   individuals,                          Hon.
12
13              Plaintiffs,              COLLECTIVE/CLASS ACTION
                                         COMPLAINT AND JURY DEMAND
14       v.

15 VELOCITY EXPRESS, INC., a Delaware
   corporation, and DOES 1-10,
16                                       FILE VIA FAX
                Defendants.
17

18     Plaintiff, PHILLIP FLORES and DARAH DOUNG, by and through their undersigned

19 attorneys, hereby bring this Collective/Class Action Complaint against Defendants,

   VELOCITY EXPRESS, INC. and DOES 1-10, state as follows:
20
                                   **INTRODUCTION**
21
22     1.     This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs,

23 PHILLIP FLORES and DARAH DOUNG, on behalf of all similarly situated persons employed by

   Defendants, VELOCITY EXPRESS, INC. and DOES 1-10, which arise from Defendants' willful
24
   violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  Plaintiffs also seek to bring their
25
26 claims for violations of the California Labor Code §§510 and 1194, the California Business &

27
28 ─────────────────────────────────────────────
              COLLECTIVE/CLASS ACTION COMPLAINT
                           1

Professional Code §17200, *et. seq.*, and California common law as a state-wide class action pursuant to Fed. R. Civ. P. 23.

2.     Plaintiffs, and those similarly situated, were subjected to Defendants' policy and practice of failing to pay the Plaintiffs a minimum wage and overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

3.     Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs and all other members of the class as independent contractors, as opposed to employees, at all times in which they worked as delivery drivers for Defendants.   Plaintiffs contend that Defendants failed to pay Plaintiffs the minimum wages and overtime benefits that they were entitled to under applicable federal and state laws. To remedy this practice, Plaintiffs bring this action as a nation-wide collective and class action pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23.

4.     The individuals that Plaintiffs seek to represent in this action are current and former delivery drivers who were improperly classified by Defendants as independent contractors. Plaintiffs contend that Defendants' improper classification resulted in the failure to properly compensate them with minimum wage and overtime pay as required under applicable federal and state laws.

5.     Plaintiffs seek a declaration that their rights, and the rights of the Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

7.     This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the FLSA and also pursuant to 28 U.S.C. §1332(a)(1), because the matter in controversy in this action exceeds $75,000, exclusive of interest and costs, and because the parties are residents of different states.

8.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

9.     This court also has jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a class in which more than two-thirds of the Plaintiffs and proposed Class on the one hand, and Defendants, on the other hand, are citizens of different states.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b-d) because Defendants reside within this District, conducts substantial business within this District, and because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

**PARTIES**

11.     Plaintiff, PHILLIP FLORES, is an individual who resides in Stockton, California. FLORES worked for VELOCITY EXPRESS as a delivery driver from May 2011 until September 2012, and has executed his consent to sue form which is attached hereto as *Exhibit B*.

12.     Plaintiff, DARAH DOUNG, is an individual who resides in Stockton, California. DOUNG is currently employed by VELOCITY EXPRESS as a delivery driver, has been working for the company since October 2011, and has executed his consent to sue form which is attached hereto as *Exhibit C*.

13.     Plaintiffs, and those similarly situated, are current and/or former delivery drivers who were employed by VELOCITY EXPRESS to perform work throughout the country.

14.     Defendant VELOCITY EXPRESS is a Delaware corporation, with its primary place of business located at 1 Morningside Drive N., Building B, Suite 300, Westport, Connecticut 06880, and places of business at various locations in California, including but not limited to 2290 Ringwood Avenue, San Jose, California 95131 and 2150 Rheem Drive, Pleasanton, CA 94588, both of which are within the jurisdiction of this Court.

15.     Defendant VELOCITY EXPRESS is registered to do business in California and can be served through its statutory agent CSC-Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

16.     Plaintiffs do not know the true names and capacities, whether individual, partner, or corporate, of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, Defendants are sued under such fictitious names.   Plaintiffs will seek leave from this Court to amend this Complaint when the true names and capacities of the DOE Defendants are discovered.

17.     The DOE Defendants in this matter are the entities that, together with the named Defendant, employed Plaintiffs and members of the Class and are thus liable for the violations of the FLSA and Labor Code complained of herein.

18.     Plaintiffs are informed and believe, and allege thereon, that at all relevant times, each of the Defendants, including the DOE Defendants, whether individual, partner, or corporate, was and is responsible in some manner for the circumstances alleged herein, and proximately caused Plaintiffs and those members of the general public and Class similarly situated, to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

19.     At all times mentioned herein, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

20.     At all times herein mentioned, the acts and omissions of various Defendants, and

1   each of them, concurred and contributed to the various acts and omissions of each and every one of

2   the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

3       21.   At all times herein mentioned, Defendants, and each of them, approved of,

4   condoned and/or otherwise ratified each and every one of the acts or omissions complained of

5   herein.  At all times herein mentioned, Defendants, and each of them, aided and abetted the acts

6   and omissions of each and every one of the other Defendants thereby proximately causing the

7   damages as alleged herein.

8       22.   At all times herein mentioned, Defendants, and each of them, were the officer,

9   director, employee, agent, representative, alter ego, or co-conspirator of each of the other

10  Defendants, and in engaging in the conduct alleged herein, was acting in the course and scope of,

11  and in furtherance of such relationship.  Unless otherwise specified, Plaintiffs will refer to all

12  Defendants collectively as "Defendants," and each allegation shall pertain to each Defendant.

13                          **GENERAL ALLEGATIONS**

14  **A. Defendants Maintain Total Control Over All Aspects of their Delivery Driver's**

15     **Employment such that the Drivers Fail to Satisfy Any Test that they are, in Fact,**

16     **Independent Contractors.**

17      23.   Plaintiffs were employed by VELOCITY EXPRESS as delivery drivers.  Their

18  job duties included driving delivery vehicles, sorting delivery packages, loading and unloading

19  delivery vehicles, and performing other miscellaneous duties as directed by their supervisors and

20  managers.

21      24.   VELOCITY EXPRESS requires its delivery drivers to enter into an Independent

22  Contractor Agreement for Transportation Services ("Agreement"), which purports to describe the

23  working relationship between VELOCITY EXPRESS and its delivery drivers.  For example, see

24  the Agreement attached as *Exhibit A*.

25      25.   All VELOCITY EXPRESS delivery drivers operate under managerial control

26  exercised by its corporate headquarters and regional corporate offices.  There are no material

27

28

deviations in job duties or descriptions for its delivery drivers from location to location.

26.     Defendants employ uniform pay practices whereby each delivery driver is paid a "route settlement" for each delivery made.

27.     Defendants deduct a percentage of its delivery drivers' income from each paycheck in order to pay the drivers' respective "quarterly estimated Federal Income and Self-Employment taxes."

28.     Defendants require the delivery drivers to arrive at its warehouse one hour to two hours early in order to sort packages that were to be delivered that day.

29.     Defendants assign the delivery drivers to their routes, which are based either on a geographic area or specific customers.   The drivers are also provided with "route sheets," which contain suggested stop times; the delivery drivers do not have a meaningful opportunity to bid for their routes or to negotiate the rates they will be paid for their routes.

30.     Defendants also require the delivery drivers to call a company dispatcher at certain times to verbally verify deliveries and to subsequently submit written verification of their completed deliveries.

31.     Defendants also require that the delivery drivers use their own vehicles to make deliveries.   In addition, the delivery drivers are responsible for their own vehicle insurance, cargo insurance, medical insurance, social security, and taxes.

32.     Defendants also require that the delivery drivers wear company uniforms and to use company signs on their personal delivery vehicles.

33.     The route assignments that Defendants impose upon the delivery drivers creates long, twelve (12) to fourteen (14) hour workdays while also preventing the drivers from taking breaks or working for other companies.

34.     Defendants , in the past and currently, continue to misclassify the delivery drivers as independent contractors and consider them to be exempt from the minimum wage and overtime requirements of the FLSA.   The delivery drivers are employees whose job duties do not meet any

of the exemptions set forth in the FLSA.   Therefore, their jobs are, in fact and in law, non-exempt from the minimum wage and overtime provisions of the FLSA.

35.   Plaintiffs, throughout the course of their employment, were directed by Defendants and its agents to perform work, were allowed to work, and did work in excess of forty (40) hours per week.

**B. The Fair Labor Standards Act Unequivocally Establishes Plaintiffs and the Class Are Employees.**

36.   The provisions of the FLSA, 29 U.S.C. § 207, require Defendants to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half times their regular rate of pay.

37.   Contrary to the above statutory enactment, Defendants fail to pay the delivery drivers a minimum wage and overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

38.   Defendants willfully violated the FLSA by knowingly and willfully failing to compensate Plaintiffs with a minimum wage or overtime for the hours they worked in excess of forty (40) hours per week according to the terms of the FLSA, 29 U.S.C. § 201, *et seq*.

39.   By way of example only, in 2009 the U.S. Department of Labor ("DOL") initiated an enforcement action against VELOCITY EXPRESS contending the company misclassified its delivery drivers as independent contractors. *Solis v. Velocity Express, Inc., et al*, Case No. 09-CV-0864-MO.

40.   Upon information and belief, that case resolved following the DOL's successful defense of VELOCITY EXPRESS's motion for summary judgment.

41.   As a result of the DOL's enforcement action, Defendants knew their employment practice of classifying deliver drivers as independent contractors was seriously suspect. Nonetheless, Defendants continued to classify delivery drivers as independent contracts, as

opposed to hourly employees.   In short, Defendants' decision to improperly classify its workers can only be described as willful.

42.     At all times relevant to this action, Defendants were "employer[s]" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq.*

43.     Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

44.     At all times relevant to this action, Plaintiffs were "employee[s]" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

45.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

46.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

47.     The violations of the FLSA, 29, U.S.C. §§ 206 and 207, committed by Defendants and alleged in this Collective Action Complaint present common questions of law and fact.

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiffs bring this action pursuant to the FLSA, 29 U.S.C. § 216(b) on their own behalf and on behalf of all similarly situated current and former delivery drivers of Defendants who are or were employed to deliver goods to its clients at any time in the last three years, who worked over 40 hours per week and were not paid a minimum wage or overtime for hours worked over 40 in a workweek.

49.     Plaintiffs do not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

50.     Plaintiffs are not exempt under the Motor Carrier Act, 49 U.S.C. § 10101, *et seq.*, for reasons that include, but are not limited to, the fact that Plaintiffs drive their own vehicles (passenger cars) that weigh less than 10,000 pounds.

51.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the delivery drivers described are "similarly situated" to Plaintiffs.   The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same legal theories.

52.     Plaintiffs estimate that the collective Class, including both current and former delivery drivers over the relevant period, will include several thousand members.   The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

53.     Plaintiffs' and the Class's entitlement to a minimum wage and overtime pay, except for amount, is identical and depends on one uniform factual question: did Defendants exercise control over the manner in which its delivery drivers worked.

54.     Similarly, the classification status of the Class and Plaintiffs involves an identical legal question: did Defendants' delivery drivers act as independent contractors and not employees, such that Defendants owe them a minimum wage, overtime, and record-keeping obligations under the FLSA.

55.     Plaintiffs share the same interests as the Class in that the outcome of this action will determine whether they are either independent contractors or employees under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> all current and former delivery drivers of Velocity Express, Inc. who are or were employed within the State of California to deliver goods to its clients, who were not paid a minimum wage or, who worked over 40 hours per

week and were not paid overtime for hours worked over 40 in a workweek, at any time in the last four years.

Plaintiffs reserve the right to amend the putative class definition as necessary.

57.    Plaintiffs share the same interests as the putative Class and will be entitled under California state law to unpaid minimum wages and overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

58.    The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants have employed hundreds of people in at least 5 locations throughout California, and were subjected to delivering goods to its clients without being paid a minimum wage or overtime pay.   The precise number of class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the putative class members.

59.    The putative class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class.   Any individual questions that Plaintiffs' claims present will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a.   whether Defendants maintained common policies or practices that required their employees to perform transportation services;

b.   The control Defendants exercised over the day-to-day activity of the delivery drivers;

c.   The manner Defendants used to determine that the delivery drivers were, in fact, independent contractors;

d.   whether California state law requires Defendants to pay a minimum wage and overtime wages to Plaintiffs and the putative class members who delivered goods to Defendants' clients; and

e.   whether Defendants should be required to pay compensatory damages,
attorneys' fees, and costs and interest for violating California state law.

60.   The status of all individuals similarly situated to Plaintiffs raises an identical legal question: whether Defendants' delivery drivers acted as independent contractors and not employees to whom Defendants would owe a minimum wage, overtime, and record-keeping obligations under California state law.

61.   The putative class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative class members were all employed by Defendants pursuant to the Agreement and performed their transportation services without receiving a minimum wage or overtime wages owed for that work.

62.   The Class meets the fair and adequate protection requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiffs and the putative class members.

63.   The putative class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to:

a.   whether Defendants, through their employment policies and practices, exercised control over the manner in which the Class worked;

b.   whether Defendants' delivery drivers are improperly classified as independent contractors; and

c.   whether Defendants calculated the delivery drivers' compensation under the same formula in the same way.

64.   The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of

similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

65.     Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions.   Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.   Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

66.     This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the California delivery drivers within that group a separate opt-out notice pertaining to their rights under the California state law.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, _et seq._

## FAILURE TO PAY MINIMUM WAGE

67.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

68.     29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked. 29 U.S.C. § 206(a) provides in pertinent part: Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

      **(1)** except as otherwise provided in this section, not less than--

      **(A)** $5.85 an hour, beginning on the 60th day after May 25, 2007;

      **(B)** $6.55 an hour, beginning 12 months after that 60th day; and

(**C**) $7.25 an hour, beginning 24 months after that 60th day;

69.     Prior to 2007, 29 U.S.C. 206(a)(1) read: "except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997".

70.     The FLSA, 29 U.S.C. § 207(a), provides in pertinent part: " ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed."

71.     Defendants failed to pay Plaintiffs the minimum wages set forth in 29 U.S.C. §206 and/or §207.

72.     Defendants failed to pay Plaintiffs their minimum wage throughout the relevant time period because it misclassified them as independent contractors.

73.     Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§206 and/or 207 for all periods in which they worked for Defendants, along with all applicable penalties, liquidated damages, and other relief.

74.     Defendants' conduct in misclassifying delivery drivers like Plaintiffs as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that they were legally entitled to.

75.     The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by an employee pursuant to 29 U.S.C. §216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as

the case may be, and in an additional equal amount as liquidated damages."). Moreover, Plaintiffs may recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. §216(b).

76. 12 U.S.C. §211(c) provides in pertinent part:

(c) Records
Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

77. 29 C.F.R.§516.2 and 29 C.F.R. §825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

78. 29 U.S.C. §215(a)(5) provides in pertinent part:

[I]t shall be unlawful for any person — (5) to violate any of the provisions of section 211(c) of this title…

79. To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, they also violated the aforementioned laws causing Plaintiffs damage.

80. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 66 S.Ct. 1187, 1192 (1946) is controlling. That rule states:

[w]here the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from

the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

81.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

82.    None of the provisions of the FLSA can be contravened, set aside abrogated, or waived by Plaintiffs or the Class.

83.    The FLSA, 29 U.S.C. 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her minimum wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

### COUNT II

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*

### FAILURE TO PAY OVERTIME WAGES

84.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

85.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

86.    Defendants violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

87.    Upon information and belief, Defendants have corporate policies of evading overtime pay for its hourly workers.

88.    Defendants' violations of the FLSA were knowing and willful.

89.    By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek,

Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).   All similarly situated delivery drivers are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate.   This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all delivery drivers who have worked or are working for Defendants in the same or similar position as Plaintiffs.

90.    None of the provisions of the FLSA can be contravened, set aside abrogated, or waived by Plaintiffs or the Class.

91.    The FLSA, 29 U.S.C. 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT III

## VIOLATION OF THE CALIFORNIA LABOR CODE §§510 and 1194

## FAILURE TO PAY MINIMUM WAGE AND OVERTIME

92.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

93.    At relevant times, in addition to the FLSA, Defendants were required to compensate Plaintiffs and all Class members at a minimum wage and at one and one-half times the regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty (40) hours per week.

94.    At all relevant times, Defendants suffered, permitted, and/or required Plaintiffs and all Class members to work in excess of eight hours per day and/or forty hours per week, but were not paid a minimum wage or overtime pay as required by California law.

95.    As a result of the unlawful acts of Defendants, Plaintiffs and all Class members were deprived of their rightfully earned minimum wages and overtime pay in amounts to be determined at trial.

96.     Defendants' conduct violated California Labor Code §§510 and 1194. Therefore, pursuant to California Labor Code §1194, Plaintiffs and all putative class members are entitled to recover damages for the nonpayment of minimum wage and overtime pay for all hours worked in excess of eight (8) hours per day or forty (40) hours per week, interest on that amount pursuant to California Labor Code §218.6, plus reasonable attorneys' fees and litigation costs.

97.     None of the provisions of the California Labor Code can be contravened, set aside abrogated, or waived by Plaintiffs or the Class.

98.     As a result of the foregoing conduct, Plaintiffs seeks on behalf of themselves and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF THE CALIFORNIA LABOR CODE §226.8**

**WILLFUL MISCLASSIFICATION OF INDIVIDUALS**

**AS INDEPENDENT CONTRACTORS**

99.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

100.    The California Labor Code, Section 226.8, prohibits the willful classification of individuals as independent contractors.

101.    The employment relationship between Defendants and the delivery drivers is described in the General Allegations above.

102.    As a result of the DOL's 2009 enforcement action, Defendants knew their employment practice of classifying deliver drivers as independent contractors was seriously suspect.  Nevertheless, Defendants continued to enter into Agreements with its delivery drivers and maintain the employee/employer relationships.

103.    As a result of the foregoing conduct, Plaintiffs seek a declaration from the Court

that Defendants have willfully misclassified Plaintiffs and the Class as independent contractors.

## COUNT V

## VIOLATION OF BUS. & PROF. CODE §17200, *et seq.*

104.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

105.    Plaintiffs brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to §17200 *et. seq*. of the California Business and Professions Code (the "Cal. Bus. & Prof. Code), and the Unfair Competition Act (the "UCL").

106.    California Business and Professions Code §17204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." On behalf of the Class, Plaintiffs seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure §1021.5.

107.    The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable and/or fraudulent business acts or practices which injured the Class members and caused them loss of money.

108.    The unlawful, unfair, unconscionable and/or fraudulent business acts or practices adopted by Defendants, which injured the Class members and caused them loss of money, were conducted by Defendants in material part in the state of California and emanated to their business operations in other states.   Class members nationwide, therefore, were harmed and injured as a result of Defendants' conduct in California. As such, the UCL applies to the entire classes' claims.

109.    Defendants adopted unlawful business and employment policies, entered into agreements and conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices nationwide and that conduct harmed class members and caused them injury and financial loss. As such, the UCL applies to all such

transactions and dealings. All members of the Class have standing to assert UCL claims against Defendants.

110.    Defendants, and each of them, have engaged and continue to engage in unfair and unlawful business practices in California by practicing, employing and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiffs and the Class minimum wages and overtime compensation pursuant to California Labor Code §§ 510 and 1194; (b) willfully misclassifying Plaintiffs and the Class as independent contractors, as opposed to employees, in violation of California Labor Code § 226.8; and (C) failing to pay to Plaintiffs and the Class minimum wages and overtime compensation pursuant to the FLSA.

111.    By failing to pay its employees a minimum wage and overtime in violation of FLSA and the California Labor Code, Defendants violated the UCL.

112.    Violations of the FLSA are unlawful acts which are independently actionable under the UCL. *Wang v. Chinese Daily News* (9th Cir. 08-56740 9/27/10); *In re Wells Fargo Home Mortgage Litig.,* 527 F.Supp.2d 1053, 1066-69 (N.D. Cal. 2007). Such cases are certifiable as nationwide class actions under Fed.R.Civ.P. 23 where the unlawful, unfair, unconscionable and/or fraudulent business acts or practices, which injured the Class, were conducted by Defendants in material part in the state of California and emanated to their business operations in other states. *Id.*

113.    By misclassifying its delivery drivers as independent contractors in violation of FLSA and/or any other state or federal law or regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

114.    By attempting to have Class members waive, abridge or limit their rights under the FLSA and/or other applicable wage and hour laws in order to work as delivery drivers, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

115.    By failing to maintain employment records under the FLSA and/or other applicable wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

116.    The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code §17200 *et. seq.* Defendants' acts and practices described herein offend established public policies, including, but not limited to those set forth in the FLSA and/or other applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

117.    The unfair business practices set forth above have and continue to injure the Class and the general public and cause injury and the loss of money, as described further within. These violations have unjustly enriched the Defendants at the expense of the Class. As a result, Plaintiffs, the Class and the general public are entitled to restitution and an injunction.

118.    Plaintiffs seek, on their own behalf, on behalf of other members of the Class similarly situated, and on behalf of the general public, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants by means of the unfair practices complained of herein.

119.    The acts complained of herein occurred within the last four years preceding the filing of the complaint in this action.

120.    Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned Defendants have engaged in unlawful, deceptive and unfair business practices, as proscribed by California Business and Professions Code § 17200 *et seq.*, including those set forth herein above thereby depriving Plaintiffs and other members of the general public the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

121.   The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiffs' and Class members' rights, and done by managerial employees of Defendants.

122.   Such a pattern, practice and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiffs in a civil action for the unpaid balance of the full amount of wages owing, including interest thereon, penalties, attorneys fees, and costs of suit according to the mandate of California Labor Code.

123.   Such a pattern, practice and uniform administration of unlawful, deceptive and unfair business practices as described herein creates an entitlement to recovery by Plaintiffs and the Class in a civil action for damages and wages owed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A.   Certifying this case as a collective action in accordance with 29 U.S.C. 216(b) with respect to the FLSA claims set forth above;

B.   Certifying the California State Law Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.   Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

D.   Designating the Named-Plaintiffs to act as the Class Representatives on behalf of all similarly situated individuals for both the FLSA and California State Law Classes;

E.   Declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

F.   Declaring that Defendants violated their obligations under the FLSA;

G.   Granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of forty (40) hours per week for the past four years;

H.   Awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid minimum wages and overtime found owing to Plaintiffs;

I.   Awarding appropriate restitution in an amount to be proven at trial for Defendants' violation of section 17200 of the UCL;

J.   Awarding actual and statutory damages for Defendants' violation of the California Labor Code;

K.   Awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

L.   Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

M.   Such further relief as this court deems appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## JURY DEMAND

2      NOW COME Plaintiffs, PHILLIP FLORES and DARAH DOUNG, by and through their

3 Attorneys, and hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

4 Procedure and the court rules and statutes made and provided with respect to the above entitled

5 cause.

6                                          Respectfully Submitted,

7                                          RIDOUT & LYON, LLP

8 Dated: November 9, 2012           By:

9                                          Christopher P. Ridout (SBN 143931)
                                           c.ridout@ridoutlyonlaw.com
10                                         Caleb LH Marker (SBN 269721)
                                           c.marker@ridoutlyonlaw.com
11                                         555 E. Ocean Boulevard, Suite 500
                                           Long Beach, CA 90802
12                                         (562) 216-7380
                                           (562) 216-7385 Facsimile
13

14                                         *Local Counsel for Plaintiffs*

15                                         Jason J. Thompson (MI Bar No. P47184)
                                           *(Pending Admission Pro Hac Vice)*
16                                         Lance C. Young (MI Bar No. P51254)
                                           *(Pending Admission Pro Hac Vice)*
17                                         Jesse L. Young (MI Bar No. P72614
                                           *(Pending Admission Pro Hac Vice)*
18                                         SOMMERS SCHWARTZ, P.C.
                                           2000 Town Center, Suite 900
19                                         Southfield, Michigan 48075
                                           248-355-0300
20                                         jyoung@sommerspc.com
                                           jthompson@sommerspc.com
21

22

23

24

25

26

27

28                                          23

Timothy J. Becker (MN Bar No. 256663)
*(Pending Admission Pro Hac Vice)*
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Fax: (612) 436-1801
tbecker@johnsonbecker.com

J. Benton Stewart (FL Bar No. 0126969)
*(Pending Admission Pro Hac Vice)*
STEWART LAW PLLC
11705 Boyette Road, Suite 205
Riverview, Florida 33569
Telephone: (813) 354-6446
Fax: (813) 354-5574
bstewart@trialwork.net

*Trial Counsel for Plaintiffs*

**EXHIBIT "A"**

*Velocity* express
*real time delivery*

LOCATION 8315
DRIVER NUMBER_____

INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES (2009 )

THIS INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of _____10-1_____, 200*11*, by and between _____ of _____ (the "Contractor") and Velocity Express Leasing, Inc., a Delaware corporation ("VEXL").

WITNESSETH:

WHEREAS, VEXL is engaged in the business of providing local delivery services with respect to general commodities, freight, documents and general merchandise, among other things (hereinafter referred to as "Items"), in the _____ area; and

WHEREAS, in connection with the operation of such business, VEXL has the need, from time to time, for the services of independent contractors to pick up, transport and deliver Items for customers of VEXL; and

WHEREAS, the Contractor is engaged in providing transportation services and is willing to be available, from time to time, to undertake to perform such service for the customers of VEXL, as an independent contractor, when and as the Contractor shall choose and elect to do so.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.  Independent Contractor Relationship.  The parties agree and acknowledge that the relationship of the Contractor with VEXL hereunder is that of an independent contractor and any and all services performed or provided by the Contractor hereunder shall be performed or provided by it in such capacity.  The Contractor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of VEXL or be deemed to hold any relationship with VEXL other than that of an independent contractor.  Neither the Contractor nor its substitute drivers, employees, helpers or servants are to be considered employees of VEXL at any time, under any circumstances or for any purpose. VEXL agrees and acknowledges that it shall have no right to direct or control the details or methods by which the Contractor performs its services hereunder, and that VEXL shall be concerned only with the results accomplished by the services performed by the Contractor and not with the means with which those results are accomplished.

Contractor shall be solely responsible for the direction and control of its substitute drivers, employees, helpers, agents or servants, including selecting, hiring, firing, supervision, directing, servicing accepted routes, setting wages, hours of work, performance standards, regulatory compliance, assigning routes of travel, providing all necessary tools or assistance to safely accomplish the work, attendance requirements and working conditions, paying, and adjusting grievances.  VEXL shall not request Contractor to discontinue the use of any particular substitute driver, helper, agent or servant of Contractor in the performance of Contractor's obligations under this Agreement, except for Material Breaches of the Agreement as defined in paragraph 18; violations or breaches of customers' rules or requirements; or violations of applicable laws, governmental rules, or regulations.

2.  Term of Agreement.  This Agreement shall commence as of the _____ day of _____, 20___, and shall continue in effect for a period of thirty (30) days from the date hereof, and from month to month thereafter ("Term") unless terminated by either party in accordance with paragraph 18 of this Agreement.

3.  Contractor's Control of Services Provided.  During the Term of this Agreement, VEXL may, from time to time in its sole discretion, based on customer requirements, request the Contractor perform courier or delivery services by advising it of the place and time of the customer requested pick-up, the destination of the delivery, and any completion schedules and specifications being requested by the customer.  The Contractor shall have the right to decline or accept any such request.  Once Contractor has elected to provide transportation service Contractor shall be obligated to complete such service.  Contractor upon acceptance of such request shall perform the courier or delivery service requested and, in connection therewith, shall select the route or routes to be taken.  All other matters relating to the pick-up, transport and/or delivery of the Items, including, but not limited to, the priority which may be given to the pick-up or delivery of any particular Item in relation to any other Item which may be picked up or delivered, shall be in the control of and at the discretion of the Contractor; provided, however, that the Contractor shall conform with any time constraints and special conditions required by VEXL's customers of which it is specifically advised at the time its services are requested by VEXL.  The result of the work must conform and meet the general contractual standards and approval of VEXL's customers.

It is Contractor's responsibility to complete accepted transportation services and make any corrections with respect to customer expectations, however, if it should become necessary for VEXL to intervene, the costs to do so will be setoff against any settlement payments due Contractor.

**V**elocity express
real time delivery

4.    Availability of Contractor.   Contractor, as an independent contractor, is expected by VEXL to work for others and hold itself out to the public generally, in a manner consistent with the other provisions of this Agreement.   Notwithstanding the foregoing, Contractor agrees that the Department of Transportation operating authority that may apply when performing transportation services for VEXL will not apply in any manner to any other operations or services performed by Contractor. Otherwise, Contractor shall make itself available to furnish services to VEXL hereunder from time to time, and at such times, as the Contractor shall, in its discretion, elect.

5.    Contractor's Settlement.

(a)    Rate of Settlement - VEXL agrees to pay, and the Contractor agrees to accept, as full and complete settlement for each delivery made by the Contractor a mutually agreed upon sum of money which has been negotiated and shall be computed as provided for in the attached Addendum A and applicable Fuel Element Settlement Adjustment (FESA).   The term "Net Revenue" as used in this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt.   VEXL shall have the right to request changes to the provisions of Addendum A.   VEXL will not be liable to Contractor for any settlement or loss associated with suspension of services due to acts of God, war, civil disturbance, acts or demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or customer suspension or termination of service.   The determination of when and how often VEXL may request the Contractor to perform transportation services hereunder shall be at the sole discretion of VEXL and nothing herein contained shall be construed as guaranteeing to the Contractor that VEXL will make any such requests.   Contractor understands and agrees that from time to time circumstances such as traffic or shipment relay delays, adverse weather, and other potentially cost increasing circumstances will occur and Contractor will not be compensated by VEXL for such occurrences but will in all cases be responsible for the risks of conducting Contractor's business.   Contractor hereby acknowledges that financial gain or loss may be recognized by Contractor while performing transportation services under this Agreement.

(b)    Timing of Settlement - Contractor shall provide VEXL with completed manifests and/or weekly invoices detailing the applicable sums Contractor believes are due under this Agreement.   These invoices shall be sent to the attention of the VEXL Accounts Payable Department at the address given in Paragraph 24 of this Agreement.   VEXL agrees to pay approved invoices according to current corporate payment scheduling.   Contractor may also, at its option, separately contract to receive settlement payment from VEXL pursuant to which payments are reconciled by VEXL on a weekly basis in consideration of a processing fee by signing a Request for Settlement Payment Services in the form attached as Schedule A of Addendum A.

(c)    Manifest Documentation - It is the responsibility of the Contractor to provide completed manifests or bills of lading detailing items such as addresses and legible signatures as proof that pick-up and/or deliveries have been completed.   As with any business Contractor shall also be responsible for the expense of manifests or bills of lading and Contractor may purchase same from another legitimate source or such documents will be made available by VEXL for a nominal amount as part of the agreed upon administrative fee charged against Contractor's settlement payments.   VEXL reserves the right to refuse payment for services if Contractor does not submit completed manifest documentation.

6.    Fringe Benefits.   Contractor agrees and acknowledges that neither it nor its officers, directors, agents, substitute drivers, helpers, servants or employees providing services under this Agreement ("Service Employees") (1) shall have the status of an employee of VEXL or (2) shall participate in VEXL's employee benefit plans or group insurance plans or programs (including, but not limited to salary, bonus or incentive plans, stock options or purchase plans, or plans pertaining to retirement, deferred savings, disability, medical or dental plans) even if such Service Employee is considered eligible to participate pursuant to the terms of such a plan or is otherwise classified as an employee for any purpose.   Contractor shall obtain a specific written agreement from Service Employees, which sets forth the terms of this paragraph, a copy of which is to be provided to VEXL.

7.    Income and Payroll Taxes.   (a) The relationship of the Contractor with VEXL hereunder being that of an independent contractor, it is fully understood by VEXL and the Contractor that neither federal, state, nor local income taxes nor payroll taxes of any kind, including but not limited to F.I.C.A. or F.U.T.A., will be withheld or paid by VEXL on behalf of the Contractor.   The Contractor agrees (i) to pay all self-employment and other applicable taxes, including sales taxes, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over the Contractor or his relationship with VEXL, (ii) to maintain sufficient records to enable VEXL to determine that the Contractor has satisfied its obligation to pay such taxes and other payments, and (iii) to properly withhold and pay all local, state and federal income taxes on behalf of all Service Employees.   Upon written request Contractor shall provide VEXL a copy, which evidences that such taxes have been promptly paid, including but not limited to, cancelled checks, receipts or government forms such as Employment Development Department Form DE-8.

(b) The Contractor hereby indemnifies and agrees to hold harmless VEXL against any claim, cost, penalty, loss or expense (including attorneys' fees) related to the Contractor's nonpayment or underpayment of any such taxes or payments as well as penalties and interest thereon.

8.    Contractor's Vehicle.

(a)    Vehicle - The Contractor shall provide and use for the performance of his services hereunder a lawfully

*Velocity express*
*real time delivery*

registered and safe vehicle capable of satisfying VEXL's and its customers' Control and Custody standards. Contractor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction shall include, but not be limited to, selection of substitute drivers, helpers, places of repair, stopping, parking, replacement, maintenance and purchases of fuel, equipment, insurance (subject to Paragraph 9 following), parts and accessories. Notwithstanding the terms of this provision, the undersigned parties agree that both parties shall benefit by adhering to certain recognized industry standards and are required to satisfy customer contractual requirements regarding driver's qualifications, such as minimum age, experience, good driving records, criminal history, drug screening, etc., and that observing such standards shall protect both parties from excessive insurance rates, cancellation of insurance coverage, and contractual breach. The equipment, which Contractor uses to perform under this Agreement, shall be identified by a schedule, which shall be attached to this Agreement as Addendum B. Addendum B shall identify the vehicle(s) allocated by the Contractor for performance under this Agreement. Contractor and VEXL shall execute a Vehicle Lease Agreement with Contractor as Lessor and VEXL as Lessee. This Vehicle Lease Agreement is a part of Addendum B.

     (b)   Department of Transportation - Contractor acknowledges that under certain Department of Transportation ("DOT") regulations and guidelines, Contractor is operating pursuant to the authority granted VEXL. Contractor agrees, whether operating pursuant to VEXL DOT authority or its own authority, to create, maintain and make available to VEXL documents required for DOT compliance, including but not limited to, driver qualification files, equipment inspection reports, hours of service, and vehicle condition reports. Contractor grants VEXL the right to periodically inspect Contractor's equipment for compliance with such regulations and guidelines. Contractor also acknowledges that VEXL under certain circumstances is required to assert control of Contractor's equipment in order to comply with relevant Department of Transportation regulations and guidelines. This in no way serves to diminish Contractor's status as an independent contractor.

     (c)   Costs and Expenses - The Contractor shall be responsible for and shall pay all costs and expenses incident to the ownership/rental and operation of any vehicle used by it in the performance of its services hereunder, including, but not limited to, rental fees, registration fees, license fees, inspection fees, insurance, tolls, fines, penalties, maintenance and repair expenses, personal property or sales taxes and fuel, oil and tire expenses.

     (d)   Signage - Many of VEXL's customers have concerns regarding safety and allowing access to their workplace. Accordingly, the Contractor shall obtain appropriate signage for its motor vehicle. The Contractor shall bear the cost and expense of obtaining, affixing and removing such signage, which costs will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. When and if this Agreement is terminated, Contractor shall remove and return the signage to VEXL either by personal delivery or by U.S. Mail or a comparable service.

    9.   Insurance.

     (a)   Public Liability Insurance- Notwithstanding VEXL's obligation to maintain coverage for the protection of the public and not for purposes of contradiction but as additional insurance, the Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability Insurance covering Bodily Injury and Property Damage, with a limits of liability not less than $300,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight of 26,000 pounds or less and $1,000,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight in excess of 26,000 pounds. Each such policy of insurance shall name VEXL, its parent, officers, directors and affiliates as Additional Insureds on such policy. If the scope of this Agreement involves more than one vehicle, coverage must apply to all other owned or hired and non-owned vehicles. The Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any changes in coverage, expiration, termination or cancellation of such insurance. Should Contractor fail to provide the aforementioned insurance and acceptable Additional Insured endorsement within seven days of the signing of this Agreement, VEXL may purchase this insurance coverage on Contractor's behalf and Contractor hereby voluntarily elects and authorizes deductions for the insurance coverage from settlement checks in payment thereof. All such insurance maintained by Contractor shall provide that insurance, as it applies to VEXL, shall be primary and VEXL's insurance shall be noncontributing notwithstanding any insurance VEXL maintains.

     (b)   Insurance Purchased Through VEXL - The Contractor may elect, with the prior agreement of an insurance carrier made available by VEXL's insurance broker, to purchase the required insurance (on dispatch coverage only) through such insurance carrier. In such case, the Contractor agrees to a deduction from its settlement checks for amounts covering the premiums for the insurance coverage. This option is available to reduce Contractor's cost of insurance, and for no other purpose.

     (c)   Worker's Compensation Insurance/Occupational Accident Insurance - The Contractor, at its own expense, shall keep in full force and effect during the term of this Agreement either, Worker's Compensation Insurance covering Statutory Benefits and Employers Liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee, or Occupational Accident Insurance (OccAcc) purchased either independently or through VEXL. Contractor shall provide VEXL with a customary Certificates of Insurance as evidence of Worker's Compensation and Employers Liability Insurance or OccAcc Insurance. Each insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any expiration, termination or cancellation of such insurance. Contractor shall complete the attached Addendum C indicating the

IC Agreement 2009 Master        3

securing of Workers Compensation Insurance or the election to retain OccAcc insurance and if purchased through VEXL voluntarily agrees and authorizes deductions from settlement fees for the OccAcc coverage. Contractor agrees to assume the liability for the payment of any Workers Compensation premiums, claims, and/or /benefits and shall indemnify VEXL for any issues, disputes, or benefits associated with the same.

(d)  <u>Legal Cooperation</u> - Contractor agrees, without qualification, to cooperate with and assist VEXL and its chosen attorneys in the defense of lawsuits against VEXL or its insurers, regardless of the merit of the lawsuit. VEXL agrees to reimburse Contractor for direct expenses incurred while assisting in the defense of such lawsuits.

(e)  <u>Insurance Companies</u> – All insurance procured and maintained by Contractor shall be with an insurance company having a rating of "A-" or better by A.M, Best.

10.  <u>Contractor's Indemnity of VEXL</u> - To the fullest extent permitted by law, the Contractor shall be liable for all damage or injury of any nature whatsoever to all persons, firms, companies, corporations or other entities, and to all property of any kind arising out of any service performed or provided by it hereunder or occurring in connection therewith and the Contractor agrees to defend, indemnify and save and hold harmless VEXL, its officers, directors, affiliates, agent, servants and employees from all claims, costs, loss and expense (including attorney's fees) in connection therewith. The foregoing indemnity shall not apply if the loss in question is caused solely by the gross negligence of VEXL. Contractor further acknowledges and accepts that there are inherent foreseeable risks in performing the transportation services that are the subject of this Agreement, including but not limited to risk of property damage and bodily injury. Contractor voluntarily assumes such risks.

11.  <u>Contractor's Liability for Items</u>.

(a)  Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo and/or Financial Cargo Liability insurance in an amount not less than $10,000.00 per occurrence with a deductible not to exceed $100.00 per occurrence, covering loss or damage to the Items which are in or subject to the care, custody and control of the Contractor. Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor shall be liable to VEXL for loss or damage to Items shipped under this Agreement whether or not the loss is covered by the insurance. Items of others picked up by the Contractor shall be deemed to be in the care, custody and control of the Contractor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent.

(b)  Contractor may elect to participate in a Cargo Loss Waiver (CLW) program rather than procure Motor Truck Cargo and/or Financial Cargo Liability insurance. Failure of Contractor to provide VEXL with the customary Certificate of Insurance as described in subparagraph 11(a) within 7 days of the signing of this Agreement, shall be an election by Contractor to participate in the CLW program. CLW is not insurance but a waiver of VEXL's right to collect from the Contractor for the loss or damage of Items while in Contractor's custody. VEXL agrees, pursuant to the CLW, to waive Item damages/losses claimed by a customer, subject to the following terms and conditions:

1. Contractor pays no more than a $18.00 per week CLW fee, which fee will be deducted from Contractor's settlement check.
2. Item loss/damage is not the result of Contractor's willful conduct or gross negligence.
3. Contractor is liable for the first $100 of loss/damage to an Item, and agrees that this amount may be deducted from its settlement check.

12.  <u>Uniforms</u>. In order to fulfill customer requirements including, without limitation, requests that drivers be easily identified with a uniform for security purposes; the Contractor shall furnish and maintain, at his own cost and expense, uniforms in accordance with the applicable VEXL division policy on uniforms. Costs for uniforms made available through VEXL will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. Contractor shall wear the appropriate uniform at all times while performing services under this Agreement. Contractor may not use VEXL's logos or uniforms other than for the purposes of providing services under this Agreement.

13.  <u>Equipment</u>. The Contractor agrees that it will provide all tools necessary for providing services under this Agreement. The Contractor shall furnish and maintain, at his own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, PalmPilots/scanners, and any other type of equipment as required by VEXL to communicate with VEXL and/or its customers and to handle and track shipments according to VEXL's and its customers' package tracking requirements. Contractor may lease any such equipment from VEXL under such terms and conditions set forth under the provisions of Addendum D attached hereto.

14.  <u>Licenses, Permits and Registrations</u>. The Contractor shall obtain and maintain at the Contractor's expense all licenses, permits and registrations as may be required to perform the services that may be required of the Contractor under this Agreement.

15.  <u>Contractor's Performance</u>. The Contractor shall, at all times, use its best efforts, ability, experience and talents in the performance of any courier and delivery services hereunder and shall do nothing nor cause anything to be done in the



performance of such services which shall unfavorably reflect upon the reputation or business practices of VEXL or its customers. Contractor shall at all times comply with all applicable laws and safety practices in the course of performing under this Agreement.

16.    Substance Abuse and Drivers Qualifications Policies.    In order to comply with applicable Department of Transportation rules and regulations and customer requirements, Contractor agrees that all Service Employees, including but not limited to Contractor, any substitute drivers, and any person having access to customer shipments or facilities will comply with VEXL's Substance Abuse Policy and Drivers Qualification Policy, referenced hereto, and all like customer qualification requirements.

17.    Confidential Information/Non-Solicitation.    In consideration of the parties' desire to execute this Agreement, and VEXL's agreement to provide the Contractor with confidential proprietary information acquired or to be acquired or developed by and belonging to or relating to VEXL or customers of Velocity Express, Inc. or any of its wholly owned subsidiaries ("VEI") including, but not limited to, methods and systems; the names and addresses of its customers and suppliers; technology used; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by VEXL or VEI customers, and Contractor's recognition that the secrecy of the confidential information gives VEXL or VEI customers a significant advantage in developing, marketing and sale of its trade and business, Contractor agrees that:

(a)    It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by VEXL;

(b)    That during the term of this Agreement and for a period of six (6) months thereafter, Contractor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, solicit, divert, take away, or provide delivery services to or for, or attempt to solicit, divert or take away any of the customers of VEI upon whom it provided delivery services to or for, or became acquainted with during the time in which it was providing services as a contractor on behalf of VEXL;

(c)    In the event of a breach or threatened breach by Contractor of any of the provisions of this Paragraph, VEXL shall be entitled to an injunction restraining Contractor from disclosing or using any such information, rendering any such service, or interfering with relationships between VEXL and VEI customers in violation of the provisions hereof. Nothing herein, however, shall be construed as prohibiting VEXL from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

18.    Termination of Agreement.

(a)    Notwithstanding anything to the contrary set forth in Section 2, this Agreement may be terminated at any time and for any reason by either party upon fourteen (14) days prior written notice to the other.

(b)    Notwithstanding anything to the contrary set forth in Section 2 or paragraph (a), VEXL shall have the right to terminate this Agreement at any time on five (5) calendar days notice in the event VEXL determines in its sole discretion that any route or routes being serviced by the Contractor hereunder do not meet the financial or budget objectives of VEXL.

(c)    Notwithstanding anything to the contrary in paragraphs (a) and (b) above, in the event either party commits a Material Breach of the terms of this Agreement, the other party shall have the right to terminate this Agreement immediately.

The term "Material Breach" shall include but not be limited to any of the following events:

(i)    the Contractor shall fail to carry and keep in full force and effect the policies of insurance required pursuant to Paragraph 8(a) and Paragraph 9 hereof, or be denied insurance coverage under INSEL;

(ii)    the Contractor fails to perform in accordance with the standard set forth by the customer and terms of this Agreement;

(iii)    the Contractor fails to perform to a customer's satisfaction;

(iv)    VEXL does not have sufficient business to engage Contractor's services under this Agreement;

(v)    use of drugs or alcohol by Contractor or its employees or subcontractors while in the performance of Contractor's services under this Agreement or a presumed positive result by virtue of a refusal to undergo a drug or alcohol test/screening;

(vi)    acting in any immoral, criminal or illegal manner by Contractor or its drivers during the Term of this Agreement;

(vii)    taking any action by Contractor or Contractor's drivers that VEXL reasonably determines to be adverse to VEXL's business, its reputation and/or its relationship with its customers;

*Velocity express*
real time delivery

(viii)  failing to maintain at all times a commercial or other driver's license as required to perform the services hereunder by Contractor or its drivers;

(ix)   Contractor or any of its drivers having a revoked or suspended motor vehicle license at any time during the term of this Agreement;

(x)    failing to maintain a motor vehicle record free of moving violations during the Term of this Agreement by Contractor or its drivers;

(xi)   any insolvency of the Contractor or the filing by or against Contractor under any bankruptcy related law or statute;

(xii)  failure of the Contractor or its drivers to complete all pickups and deliveries accepted hereunder in a timely manner, and without loss or damage to any property accepted for delivery;

(xiii) failure to maintain any necessary motor carrier authority required to deliver packages hereunder by Contractor or its drivers,

(xiv)  providing false or fraudulent proof of performance of contract services; and/or

(xv)   the Contractor in any other manner fails to perform as required pursuant to the terms of this Agreement and the breach is not cured within three (3) days of receipt of notice of the breach;

(d)    If VEXL terminates this Agreement pursuant to paragraph (c) of this Section, VEXL may take possession of the items being delivered by Contractor and complete the deliveries. Contractor agrees to allow VEXL to deduct from its settlement checks for any costs, expenses or damages incurred by VEXL as a result of Contractor's breach including, but not limited to, costs of re-handling, costs of completing deliveries, and damages paid to the shipper or consignee.

(e)    Upon the termination of this Agreement through the expiration of its term, non-renewal or as otherwise provided for in this Paragraph 18, VEXL's only liability and sole responsibility to the Contractor shall be to make payment to Contractor of unpaid sums, for services completed prior to termination, which have been incurred pursuant to Paragraph 5 hereof.

(f)    Should this Agreement be terminated by Contractor or terminated pursuant to paragraph (c) by VEXL, all Contractor start-up costs initially paid by VEXL and reimbursed by Contractor, in the first year of engagement as part of the weekly administrative services fee, which include but are not limited to drug testing, background reporting, and the annual uniform package, will be immediately due and payable pursuant to the following reimbursement fee schedule, with said fee to be deducted from Contractor's settlement fee:

- Reimbursement fee: $8.54 for each week remaining until the first anniversary of the initial engagement.

19.    Waiver.  The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall never be construed as being a continuing or permanent waiver of any such terms or conditions, all of which shall be and remain in full force and effect as to future acts or happenings notwithstanding any such waiver.

20.    Headings.  The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

21.    Governing Law and Choice of Forum.  The laws of the State of New Jersey, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties.  Contractor further agrees that he/she is subject to the jurisdiction of the courts of New Jersey with respect to any legal proceeding commenced to enforce any provision hereof or for any breach hereof.

22.    Entire Agreement.  This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein.  This Agreement supersedes any prior agreement between VEXL, its predecessors, successor or affiliates and Contractor relating to the subject matter hereof. Any modification of or amendment to this Agreement will be effective only if it is in writing signed by the party to be charged, except that VEXL may assign this Agreement, without written confirmation from Contractor, to any corporation which controls VEXL, is controlled by or under control of VEXL, or to any corporation resulting from the merger of or consolidation with VEXL and as allowed pursuant to Section 5.

**V**elocity*express*
*real time delivery*

23.   Gender, Etc.  Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

24.   Notice.  Any notice to be given hereunder by a party may be effected by personal delivery in writing or by registered or certified United States mail, postage prepaid.  Notices shall be addressed to the parties at their following respective addresses or at such other address as a party may designate by giving written notice in accordance with the provisions of this Paragraph.

TO:   VEXL: See below.                    TO:   CONTRACTOR: See below.

25.   Reformation and Severability.  If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

26.   Recovery of Items in Case of Emergency.  Contractor agrees that in the event of an emergency, which includes but is not be limited to a vehicle accident, occurring while Contractor is in the course of providing services under this Agreement, VEXL is herby authorized and granted permission to obtain access to and enter Contractor's vehicle to remove any items on board so as to maintain care, custody, and control protocol, assure security of the items, and complete delivery of time sensitive items.

THIS IS A LEGALLY BINDING DOCUMENT.  PLEASE READ IT CAREFULLY AND SEEK LEGAL ADVICE IF ANY PORTION OF THIS AGREEMENT IS NOT UNDERSTOOD.   THE PARTIES HERETO AGREE THAT BY SIGNING THIS AGREEMENT THEY HAVE CONSULTED WITH LEGAL COUNSEL OR HAVE WAIVED SUCH RIGHT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

VELOCITY EXPRESS LEASING, INC.                    CONTRACTOR

By:  *Kimberly Shaw*                               By:  *DARAH DOUNG*
(Print Name)                                       (Print Name)
Signature: *Kimberly Shaw*                         Signature: *Dara A. D.*
Address: *850 S. Guild Ave #100*                   Address: ▮▮▮▮▮▮▮▮▮▮
City/State/Zip: *Lodi, CA 95240*                   City/State/Zip: *Stockton, CA 95210*

Notice to Contractor:  Please keep copy of the Agreement and all Addendums for your records.

**V**elocity*express*
*real time delivery*

ADDENDUM A
RATE OF SETTLEMENT
Scheduled Route and Contingency On-Demand or Distribution Rates

VEXL agrees to pay upon receipt of all required manifest documentation, and the Contractor agrees to accept, as full and complete settlement for services rendered by the Contractor a sum of money, which shall be computed as follows together with applicable Fuel Element Settlement Adjustment (FESA) and paid to the Contractor in accordance with VEXL's normal settlement procedure. The following proposed route settlement is not a guarantee but is projected based on current route structure and may vary according to changes in route structure occurring during this Agreement.

**Scheduled Route Settlement:**

Route 651      Rate per Piece/Job $_____

Route _____      Rate per Piece/Job $_____

Route _____      _____ % Net Revenue

Route _____      _____ % Net Revenue

Route _____      _____ % Net Revenue

**Additional Contingency Settlement for On-Demand or Distribution Work:**

VEXL may call upon Contractor as needed to provide services for unscheduled work, which will be compensated as follows:

Conjunctive On-Demand or Distribution Work:      _____ % Net Revenue per Stop; or

_____ $ Per mile; or

_____ $ Per Stop

Non-Conjunctive On-Demand or Distribution Work:      _____ % Net Revenue per Stop

_____ $ Per mile; or

_____ $ Per Stop

A completed manifest submitted to VEXL shall constitute an invoice for the Contractor. The Contractor's acceptance of VEXL's settlement report shall be conclusive proof of the parties' agreement to the revenue due to the Contractor, if any. If the Contractor wishes to challenge the settlement report, the Contractor must provide VEXL with a Settlement Research Form within 30 days of the date of the settlement sheet setting forth the specific reason and provision of the Research Request. The parties understand and agree that the Contractor's acknowledgement of the settlement report is general commercial practice within the delivery industry and is controlling for both parties. As such, the Contractor agrees that cashing or depositing the settlement check shall constitute final acceptance and settlement of the monies due the Contractor. The term "Net Revenue" as used above shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt.

Effective Date: 11-9-11 _____      Location No. 8315 _____

Independent Contractor Signature: _____

Independent Contractor Printed Name: SARAH SOUNG      Drv # _____

Authorized VEXL Signature: _____      Date: 11-9-11

*Velocity express*
real time delivery

A of Addendum A
Request for Settlement Payment Services

Independent Contractor drivers have the following options for receiving settlement payments:

**Option A or B:**  Independent Contractor drivers may choose to receive settlement payment checks for services rendered under the Independent Contractor Agreement for Transportation Services on a weekly or bi-weekly basis through the Independent Contractor Payables department. This option is offered only upon the payment by Independent Contractor drivers of a processing fee established by the Velocity Express Finance Department that is reviewed regularly and adjusted periodically in keeping with current business requirements.

**Option C:** Independent Contractor drivers may select to be paid through Accounts Payable on a 45-day payment cycle (45 days from invoice date) with all other vendors.  Independent Contractor drivers choosing this option must submit a monthly-itemized invoice with a completed W9 form (with the first invoice) to the location manager.  The invoice must contain the following information:

- Independent Contractor Name (as it appears on the tax ID)
- Address
- Tax ID#
- Dates of service
- Description of service provided (customer or route information)
- Proof of Delivery
- Amount charged for each service provided
- Total amount of charges submitted on the invoice

The location manager will review and approve the invoice (subject to FESA) for payment and forward to the Accounts Payable Department along with other Independent Contractor invoices from the location.  Settlement checks will be mailed to the Independent Contractor driver at the address specified on the W9.  Independent Contractors that select Option C will not be charged the processing fee for weekly or bi-weekly settlement checks payable in Options A or B.

Request for Weekly Settlement Payment:

By my signature below, I request to receive weekly/bi-weekly settlement payments for services rendered through Independent Contractor Payables and agree that the processing fee charge may be deducted from my settlement.

Independent Contractor Driver Signature _____

Or

Request for Payment Through Accounts Payable:

By my signature below, I request to receive payment for services rendered through Accounts Payable at no charge by submitting an invoice to the Velocity location manager in accordance with the instructions above.

Independent Contractor Driver Signature _____

**V**elocity *express*
real time delivery

ADDENDUM B
DOT REQUIRED VEHICLE LEASE AGREEMENT

This DOT Required Vehicle Lease Agreement (hereinafter referred to as "Lease Agreement") is made and entered into between VELOCITY EXPRESS LEASING, INC., (hereinafter referred to as "Lessee") and _DARAH DOUNG_, (hereinafter referred to as "Lessor"), this _18_ day of _Nov_, 200_11_.
WHEREAS, Lessee is a regulated motor carrier holding interstate operating authority issued by the Federal Highway Administration and intrastate authority issued by state agencies in which Lessee conducts intrastate operations; and,
WHEREAS, Lessor is owner of or leasing certain motor vehicles and equipment, more particularly described as:

Veh Year: _03_  Veh Make: _TOYOTA_  Veh Description: _4 doors Corola_  VIN #: _____

WHEREAS, Lessor desires to operate Lessor's vehicles under the authorities of Lessee, where required; and
WHEREAS, the regulations governing use of equipment by an authorized carrier, which the authorized carrier does not own, require a written lease agreement;

NOW THEREFORE, in consideration of the mutual promises herein contained, Lessor and Lessee hereby agree as follows:
1.   Terms of Lease Agreement:  This Lease Agreement shall commence on date above, and shall remain in effect at least thirty (30) days and thereafter until terminated as provided herein or upon termination of the Independent Contractor Agreement for Transportation Services ("Agreement").
2.   Termination:  This Lease Agreement shall terminate upon termination of the Agreement.
3.   Lessor is Independent Contractor:  To and only to the extent required by 49 CFR § 376 Lessee hereby assumes possession, control and use of the equipment for the duration of this Lease Agreement.  As specifically provided for in 49 CFR § 376.12, nothing in the foregoing provision is intended to affect Lessor's status as an independent contractor.  All particulars regarding the extent to which Lessee exerts any control over the personal services of Lessor driver and liability associated with operation of the leased vehicle are contained in an Independent Contractor Agreement for Transportation Services entered into simultaneously herewith and this Lease Agreement confers direction and control of Lessor's equipment in Lessee only to the extent required by 49 CFR §376 et seq.
4.   Duties of Lessee:
     (a)  Subject to its right to delete the names of shippers and consignees shown on the freight bill and assure confidentiality, Lessee shall provide a copy of rated freight bills to Lessor upon request by Lessor where Lessor's revenue is based on a percentage of the gross revenue for a shipment.
     (b)  Lessee shall pay all yearly revenue fees imposed or assessed by any state or regulatory authority held by Lessee.
     (c)  Lessee shall provide all certificate identification required by any governmental authority, which shall be affixed to or carried in the vehicles described above during the existence of this Lease Agreement.  All such certificate identification shall remain the property of Lessee and shall be removed and returned to the Lessee upon termination of this Lease Agreement.
5.   Duties of Lessor:
     (a)  Lessor shall pay all costs and expenses incident to the performance of this Lease Agreement and all operating and maintenance costs for the vehicles described and used in said performance, including but not limited to, vehicle license fees, mileage taxes and any other tax including but not limited to Heavy Vehicle Tax and International Fuel Tax Agreement (IFTA), fines or fees imposed or assessed against the vehicle(s) and equipment, cargo, or Lessee by any federal or state authority as a result of an action by the Lessor, or the employees or agents of the Lessor, in the performance of the Lease Agreement.
     (b)  Lessor is not required to purchase or rent any vehicle products, vehicle equipment, or vehicle services from Lessee as a condition of entering into this Lease Agreement.

IN WITNESS WHEREOF, the said parties to this Lease Agreement have hereunto signed their names, the day and year first above written.

LESSEE:

VELOCITY EXPRESS LEASING, INC.

Signature: _K Shaw_
Date Signed: _11-9-11_

LESSOR:

_DARAH DOUNG_
(Print Name Clearly)
Signature: _____
Date Signed: _11-18-11_

**V**elocity*express*
*real time delivery*

ADDENDUM C

Workers Compensation Or Occupational Accident Election Form

I, the undersigned, hereby attest to be duly organized in the State where the majority of the Services to be performed under the Independent Contractor Agreement For Transportation Services will be preformed as a sole proprietorship/partnership/S Corporation/C Corporation/LLC. I further attest to have purchased either; Workers Compensation Insurance and Employer's Liability through a private insurance carrier or directly from the state, or elect to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

I have elected the following: (*mark ONLY one*)

_____ (initial)   I have procured Workers Compensation with (Name of Inc. Co.) _____

The policy number is _____

The policy expires _____(please attach copy of declaration page).

_D.D_ (initial)   I have elected to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

(Consultation with your own insurance professional to determine the appropriate coverage is recommended.)

I, the undersigned, agree that if I have elected to secure Occupational Accident Insurance through Velocity Express Leasing, Inc. costs and administration fees for the same may be automatically deducted from my settlement payments. I understand I have no workers compensation coverage other than that which I have purchased myself as described above. I further understand and agree not to pursue workers compensation claims through Velocity and agree to indemnify Velocity Express Leasing, Inc. for any Workers Compensation issues, claims, disputes, or benefits.

DARAH S. DOUNG
_____
Name (Printed)

_____
Title (i.e., Owner, Partner, etc.)

_____
Name of Business (If Applicable)

10-01-11
_____
Date Signed

*Velocity express*
real time delivery

# Addendum D - Schedule D
# Equipment Form

LOCATION
CODE_____

DATE: _10 - 01 - 11_____

DRIVER NUMBER_____

I, _____ , acknowledge receipt of the following said equipment and agree to a deduction from my weekly settlement for the associated rental, airtime, repair and replacement costs.  I understand that I am solely responsible for the equipment and will be held accountable should it be lost, stolen or broken beyond repair. Further, I understand that should termination of contract occur, I will be expected to immediately return said equipment.  If I neglect to return the equipment, the amount necessary to replace the equipment will be due within ten (10) days of the contract termination date.  If I do not reimburse Velocity Express in full for the said equipment, I understand that all replacement costs will be deducted from the final settlement and I will be responsible for any legal fees incurred by Velocity Express in an effort to obtain cost reimbursement.

| Scanner | | Gate Card No. | |
|---|---|---|---|
| V5.0 Replacement Cost | $2500.00 | Replacement Cost | $25.00 |
| Card # | | ID Badge No. | |
| Serial Number | | Replacement Cost | $5.00 |
| V3.5 Replacement Cost | $850.00 | Vehicle Signs | VE DOT signs |
| Stylus Cost | $ 5.00 | Replacement Cost | $25.00 |
| Holster Cost | $ 50.00 | Car Charger | $83.00 |
| Repair unit (screen) | $ 250.00 | Other | |
| | | | |

Driver Signature: _____   Date: _10-01- 11_

VEXL Representative Signature: _____   Date: _11-9-11_



### Addendum E
### CONTROLLED SUBSTANCE AND ALCOHOL
### TEST CONSENT AND ACKNOWLEDGMENT FOR INDEPENDENT CONTRACTORS

I understand that because I am engaged as an independent contractor in providing transportation services, I am involved in a safety sensitive business that puts the public at risk. As such, as a condition of contractual engagement, I must voluntarily consent to and satisfactorily complete urine-screening tests to determine the presence of certain controlled substances and/or a breath, saliva, and/or blood alcohol test to determine the presence of alcohol. I further understand that all provisions of this policy apply to any and all of my own employees or subcontractors who operate on behalf of Velocity Express Leasing, Inc. pursuant to my contract.

I further understand that I must voluntarily consent to unannounced searches and inspections of myself, my clothing, vehicle (owned, non-owned, or leased vehicle), and any package, purse, briefcase, toolbox, lunch box, or other container brought onto Company premises, for the purpose of enforcing this policy.

As a candidate for contractual engagement, I understand that the presence of one or more of such controlled substances or alcohol will disqualify me from further consideration for contractual engagement.

As an incumbent independent contractor, I understand that because the safety of the public is involved, the Company has adopted a "zero tolerance" policy and that failing a test for controlled substances and/or excessive alcohol will result in immediate termination of my contract. I also agree that the Company cannot force me or my drivers to undergo a drug and/or alcohol test. I agree, however, that, because of the safety sensitive nature of my business and the services I am rendering, the Company and customer will be forced to treat my refusal to undergo a reasonable suspicion and/or accident related drug and/or alcohol test as a "presumed positive" test result and terminate my services and/or service contract.

I certify and acknowledge that I have received, read (or have had read to me), the Driver Awareness Package, this form, and the Velocity Express Leasing, Inc. Substance Abuse Policy (and the related DOT Substance Abuse Policy, if applicable), that I understand their contents and agree to comply with the terms and conditions of each or will contact a Company representative regarding information I do not understand. I agree to the release of information obtained through medical inquiries or substance screen tests by the medical examiner(s) to Velocity Express, Leasing, Inc. and all related entities or its representatives on a "need to know" basis.

I hereby agree to pay directly or authorize the Company to deduct from my settlement, the costs of any Pre-engagement Tests, Periodic Tests and Re-engagement/Follow-up Tests administered pursuant to this policy.

I also hereby authorize the Company to conduct through its designated medical examiner(s), a substance abuse screening test(s) and I release the clinic/physician and related entities, their directors, employees and agents from all legal responsibility related to providing the information obtained through the medical inquiries or screening test to the Company or other authorized entities.

| _(signature)_ | _(redacted)_ |
|---|---|
| Independent Contractor Signature | Social Security Number |
| _(signature)_ | 11-9-11 |
| Witness Signature | Date Signed |

IC Agreement 2009 Master                    15

314-8315

**Velocity** express
real time delivery

# VEHICLE USE AUTHORIZATION FORM

To:    Velocity Express, Inc.

I, _Rong Choup_ , am the registered owner of the vehicle identified below and hereby give my authorization for _Darah Doung_ to operate the vehicle described herein for the purposes of performing commercial courier services as an independent contractor for Velocity Express, Inc.

Vehicle Description

Make _Toyata_                              Model _Corola_

VIN # ███████████████                   Year _2003_

License Plate # ███████████

_Rong Choup_                              _11-09-11_
Vehicle Owner                             Date



## <u>Acknowledgement of Receipt</u>

I acknowledge that I have received a copy of the Velocity Express Leasing, Inc.

Independent Contractor Agreement entered into on _____.

I also understand that I am responsible for reviewing the contractual agreement

and complying with all of its provisions.

_____            _10 - 01 - 11_____
Independent Contractor Signature             Date

_____            _10 - 1 - 11_____
Velocity Manager Signature                   Date

INDEPENDENT CONTRACTOR/DRIVER
OCCUPATIONAL ACCIDENT ENROLLMENT FORM



**INSURED PERSON INFORMATION:**

DOUNG     DARAH     S.
Last Name      First Name       M.I.

_____
Street

Stockton,    CA     95210
City         State        Zip

_____  C4274032  _____
Telephone       CDL #       SSN/FEIN#
Number

06/06/66    Male     Maried
Date of Birth    Sex      Marital Status

Prach     Sorya
Beneficiary Last    First Name       M.I.
Name

Wife _____ or Pay to my Estate
Relationship

Contract         Requested Insurance
Effective Date       Effective Date

Location Name    Omni Lodi

Location Number    8315

**Gallagher Transportation Services**
Arthur J. Gallagher Risk Management Services, Inc.
2345 Grand Boulevard, Suite 900
Kansas City, MO 64108
(816) 421-7788
(800) 279-7500

**ACCEPTANCE**

I hereby request coverage under the Independent Contractor Occupational Accident Insurance Program. I verify that I am the contractor named on this enrollment form who is under contract to the sponsoring company on the date of this application. I have read and understand the terms and conditions on the reverse side and have designated the noted beneficiary, in the event of my death.

I certify that I am over age 18 and under age 75 as of the date set forth below. I also certify that my income is reported to the Internal Revenue Service via IRS Form 1099.

In accordance with my independent contractor agreement, and as an addendum thereto, I authorize the sponsoring company to periodically deduct my insurance costs from settlements or other monies due to me. If such settlements (or such other monies) are not sufficient to allow deduction of the full insurance cost, I will remit by certified check or money order for the outstanding insurance cost to Gallagher Transportation Services, 2345 Grand Boulevard, Suite 900, Kansas City, MO 64108 within a ten (10) day period. I understand the insurance underwriters may cancel this insurance coverage within policy terms and conditions. I also understand coverage will not automatically be reinstated if cancellation is processed.

By signing this enrollment form, I hereby expressly grant Gallagher Transportation Services, Arthur J. Gallagher Risk Management Services, Inc., the insurance broker, the limited authority to procure for me Occupational Accident coverage. I also hereby agree that I have not received any advice, counsel, direction or any representations from Gallagher Transportation Services as to the propriety of the insurance coverage, their skills or expertise as it may relate to any of my business, individual insurance needs or specialized needs; nor have I relied on any statements or actions made by Gallagher Transportation Services to evaluate my operations as an individual insurance risk.

I hereby authorize any providers of health care services, suppliers, claim administrators, insurers and others who have a legitimate need for such information (including the sponsoring company and Gallagher Transportation Services) for the purpose of development and implementation of loss control, risk management and insurance rate making activities, to supply each other with information about my health status and health care services provided to me.

I agree that a photographic or facsimile copy of the authorization is as valid as the original.

Signed: _____

Date: 10-01-11

INDEPENDENT CONTRACTOR/DRIVER
OCCUPATIONAL ACCIDENT ENROLLMENT FORM

TERMS AND CONDITIONS (Please read carefully)

It is further understood and agreed:

1. Not Statutory Workers' Compensation & Employers' Liability: This coverage is NOT a statutory Workers' Compensation and Employers' Liability policy, and the benefits under this policy do not necessarily equal the benefits for which an individual might be eligible under statutory Workers' Compensation. However, the Insured Person agrees that in the event of an occupational accident, he/she will look to this program in lieu of seeking Workers' Compensation coverage. You, the contractor understand and acknowledge that filing for Workers Compensation benefits may adversely affect benefits payable under this occupational accident policy.

2. Non-Duplication of Workers' Compensation Benefits: No benefits shall be payable under this Policy for any loss for which the Insured claims coverage under any Workers' Compensation, Employers' Liability, Occupational Disease or similar law. The Company reserves the right to recover and the Insured person agrees to pay to the Company, from the Insured, any benefits paid pursuant to claim(s) under this policy which are subsequently claim(s) under any Workers' Compensation, Employers' Liability, Occupational Disease or similar law.

3. Cost and Consent to Cost Change: You, the contractor, hereby agree and acknowledge that the sponsoring company may have charged an administrative fee over and above the insurance premium, and that such fee reflects additional costs of administration related to settlement deductions and other tasks required of the sponsoring company with regard to the insurance program. The insurance broker is paid to procure the insurance consistent with usual and customary amounts for such services. The insurance cost shown may also include special taxes and fees that must be collected and paid to governmental bodies. The insurance underwriters reserve the right to change the rate by giving written notice to you.

4. Evidence of Coverage: Your state of principal operations could require you to purchase Statutory Workers' Compensation; otherwise, the sponsoring company will accept this Independent Contractor Occupational Accident Program. If you do not participate in this Occupational Accident Program, you are required to have on file a certificate of

insurance for Statutory Workers' Compensation or when allowed by law, an Occupational Accident Certificate; your insurance agent assisting in the purchase of your Workers' Compensation coverage should provide this information to the sponsoring company. You will be enrolled in the Independent Contractor Occupational Accident Program until you provide proof of appropriate coverage. At that time you will receive an adjustment in any costs charged to you, not to exceed 30 days.

5. Termination: In the event the contractor's agreement with the sponsoring company is terminated for any reason by either party, the Occupational Accident coverage will be cancelled effective the date of the contract termination or the earliest date thereafter allowed by law. You should make arrangements to replace coverage immediately.

6. Terms & Conditions: Coverage will be subject to all policy terms, conditions and exclusions as detailed in the Evidence of Insurance. The Insured Person must be over age 18 and under age 75 to enroll in the plan.

7. Authorization of Settlement Deduction: You, the Contractor, authorize the sponsoring company to take from your settlement checks (or other monies due you including funds, accruals or other compensation, on a periodic basis e.g. weekly) in amounts sufficient to pay all assessed costs and hereby instruct it to forward directly to Gallagher Transportation Services such amounts by the 15th of each month. Your cost (as described in "Cost and Consent to Cost Change") will be deducted from your settlement check. If your settlement check isn't enough to cover the insurance cost to you, you agree to forward a certified check or money order made payable to Gallagher Transportation Services, 2345 Grand Boulevard, Suite 900, Kansas City, Missouri 64108 immediately, or the coverage will be cancelled, in accordance with policy terms and conditions.

8. Effective Date: Coverage shall become effective on the date your application is accepted by Gallagher Transportation Services.

## Gallagher Transportation Services

Arthur J. Gallagher Risk Management Services, Inc.
2345 Grand Blvd., Suite 900
Kansas City, MO 64108
(816) 421-7788
(800) 279-7500



Please fax all applications to Gallagher Transportation care of the DQT at (713) 346-9286



## Velocity Express Vendor Minority & Veteran Status Questionnaire

*To be submitted with driver set up or contract renewal documents*

It is the policy of this organization to provide independent contractor vendor opportunities to all qualified applicants without regard to race, color, religion, national origin, sex, age, sexual preference, veteran status or disability. The purpose for gathering this data is to identify opportunities to participate in federal and local programs for minority, veteran disabled, and/or female vendors.

### PLEASE PRINT

| NAME (LAST, FIRST, MIDDLE) | DATE |
|---|---|
| DOUNG, DARAH S. | 10-01-11 |

**WHAT IS YOUR RACE/ETHNIC ORIGIN?**

- ☐ WHITE
- ☐ HISPANIC
- ☐ AMERICAN INDIAN/ALASKAN NATIVE
- ☐ AFRICAN AMERICAN
- ☒ ASIAN/PACIFIC ISLANDER

**WHAT IS YOUR GENDER?**

- ☒ MALE
- ☐ FEMALE

**ARE YOU A VETERAN?**   ☐ YES   ☒ NO

A person who served on active duty for a period of more than 180 days and was discharged or released therefrom with other than a dishonorable discharge.

**ARE YOU A MWDBE?** (Certified as a Woman Owned Business and /or Disabled Business Enterprise (MWDBE)?

☐ YES   ☒ NO

If "YES", please attach certificate.

| Form **W-9** (Rev. January 2005) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | **Give form to the requester. Do not send to the IRS.** |
|---|---|---|

**Name (as shown on your income tax return)**
DARAH S. DOUNG

**Business name, if different from above**

Check appropriate box:  ☑ Individual/ Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ►_____   ☐ Exempt from backup withholding

**Address (number, street, and apt. or suite no.)**
[redacted]                                          Requester's name and address (optional)

**City, state, and ZIP code**
Stockton   CA 95210

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number** [redacted]

or

**Employer identification number**

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**   Signature of U.S. person ►  [signature]   Date ► 10-01-11

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Cat. No. 10231X                                          Form **W-9** (Rev. 1-2005)



# Independent Contractor NON DOT Fax Cover Checklist
### Updated 1/12/2009

Fax to: Northeast/Midatlantic 832-838-4269  South/Southeast 281-201-4523
West/Midwest  281-201-4415

From: Omai Lodi
Telephone No.
Driver Name: DARAH S. DOUNG
Driver No.(suggested range): GOOD
Percentage: 65 % (Must Match Addendum A)
Operational Unit: 81L
Location No. 8315

<u>THIS DRIVER WILL HANDLE AIR FREIGHT AND REQUIRE A STA APPLICATION:     YES     NO</u>
<span style="font-size:small">circle one</span>

#### Required Velocity Documents

_____ Signed IC Agreement w/attachments (all blanks must be filled out and signed by Location Rep)
_____ W-9 Form (if using an "Employer ID Number" must provide the EIN Certificate also)
_____ Minority Vendor Questionnaire
_____ Fair Credit Reporting Act (FCRA) Release Form
_____ Vehicle Use Authorization Form   (only required if two names or different name appears on registration)
_____ Insel Application (to be submitted if contractor only has personal auto insurance)
_____ Deduction Auth Except Form (must be filled out completely)
_____ Occupational Accidental Enrollment Form
_____ Annual Uniform Order Form
_____ IC Substitute ID Form (Waive right to designate substitute - see bottom of form)
_____ Acknowledgement of Receipt Letter

#### Required Documents to be supplied by Independent Contractor

✓ Driver's License (copy of front and back)
✓ Social Security Card (if "Work Only" on the card submit the Immigration and Naturalization Card also)
✓ Vehicle registration (if two names or a different name appears need "Vehicle Authorization Form")
         [NOTE: GVWR is required, if not on Reg see inside door panel and fill in blank _____ gvw]
         [NOTE:  INSEL INSURANCE WILL SUPPLEMENT PERSONAL AUTO INSURANCE]
_____ Commercial Auto Insurance Policy (policy number and expiration date must be preprinted)
         Vehicles under 26,000 gvw need 300,000 Combined Single Li must name VE additional insured
         Vehicles over 26,000 gvw need 1,000,000 Combined Single Li must name VE additional insured
NOTE:  INSEL INSURANCE AVAILABLE TO DRIVERS WITHOUT COMMERCIAL INSURANCE
_____ Motor Truck Cargo Insurance (or CLW deductions will be taken)
         $10,000 per occurance, must name VE additional insured

#### Optional Documents

<u>STA APPLICATION (Only send if driver handles air freight)</u>
<u>RCI APPLICATION (Only send if driver will deliver retail freight)</u>
_____ IC Substitute Ltr of Understanding (only applies if sub is not existing IC)
_____ IC Helper ID Form
_____ IC Helper Ltr of Understanding
_____ Opti Med Application
_____ Tax Escrow Authorization Form

NOTICE:  MICHIGAN ONLY
         MPSC Operating Authority

NOTICE:  OKLAHOMA ONLY
         Oklahoma Department of Labor Certificate

| For DQT Use Only | |
|---|---|
| _____ | MVR Received |
| _____ | Criminal Report Received |
| _____ | Drug Chain of Custody Form Received |
| _____ | Drug Test Results Received |
| _____ | Insel Certificate Received |

**INSEL Application - New ICs**
**Fax to: West, Midwest 281-201-4415**
**832-838-4269 - Northeast, Mid-Atlantic**
**281-201-4523 - Southeast, South & NYC**

**Coverage is effective the date the application is**
**accepted by Gallagher Transportation Services.**

I.   **CHOOSE COVERAGE OPTION:** one *MUST* be checked
   ❑ Liability Only - Does not include Physical Damage (In-Service Coverage Only)
   ❑ Liability & Auto Physical Damage (In-Service Coverage Only)
   ❑ Peritas (In-Service Liability Coverage Only)
   ❑ Bush Leasing Participant (In-Service Liability, Non-Trucking Liability and 24 Hour Physical Damage)

II.  **PERSONAL INFORMATION:** *Applicant should complete*

   Print Your Name   *Doung*,   *Darah*   *S.*
                     Last        First        Middle Initial

   Address   ▮▮▮▮▮▮▮▮▮▮▮▮▮
             Street
             *Stockton, CA*   *San Joaquin*   *95210*
             City      State      County      Zip Code

   Driver's License #  ▮▮▮▮▮▮▮  DOB  *06/06/66*   State  *CA*

   Expiration Date  *06 / 2014*   Number of Years Licensed in the US  _____

III. **VEHICLE INFORMATION:** *Applicant should complete*

   List the vehicle(s) to be driven.  You may insure more than one vehicle but all vehicles must be scheduled and
   used in the courier operation (in-service only).  Please submit change form for each additional vehicle.

   Year:  *2003*      Make:  *ToYoTA*      Model:  *Corola*

   VIN:  ▮▮▮▮▮▮▮▮▮▮▮      GVW:  _____

   Type:  ☒ Automobile   ❑ Pickup Truck   ❑ Van   ❑ Sport Utility
          ❑ Other (Specify)  _____
          ❑ Medium Weight (10,001 - 26,000 pounds)

   Do you own the vehicle noted above?      ☒ No      ❑ Yes

   If no, what is your interest in the vehicle?  _____

IV.  **PHYSICAL DAMAGE:** *Applicant must complete to purchase physical damage coverage.*

   Do you want to purchase Physical Damage coverage (on dispatch only)?   ☒ No   ❑ Yes

   If yes, what value do you want to insure it for?  (Actual Cash Value)  _____

   Your vehicle is insured against covered losses while on Velocity dispatch for its actual cash value at the time of loss or
   cost of repair, whichever is less.  Actual Cash Value means the cost to purchase similar vehicle (year, make, model
   equipment, etc.).  It is important that you properly value your equipment.  You should check with a dealer if you need
   help determining the actual cash value on your equipment.

If Physical Damage coverage is requested, does your lending institution need to be added to the Insurance Confirmation?   ☒ No   ☐ Yes

If yes, please complete

_____
Lending Institution Name                              Address

_____
City              State              Zip              Fax Number

*Applicant must sign below to acknowledge application for coverage:*

I understand and agree the in-service insurance provided is for on-dispatch liability only, unless physical damage coverage is also purchased. It does NOT include coverage for uninsured/underinsured drivers, personal injury protection, medical payments, property, cargo, or other coverage. I am also responsible for notifying my lending institution, if applicable. In addition, Bush Leasing participants are included in the NTL and physical damage programs.

Signature of Applicant _____   Date _10 - 01 - 11_

---

**V.**   **DRIVER SERVICES PERSONNEL:** *Check the boxes below indicating which documents are included.*

Coverage does not apply until AJG receives all appropriate documents & your office has confirmation of acceptance.

☒ This Completed Application, signed by the applicant       ☒ Copy of Registration/Bill of Sale
☐ Current (within last 30 days) Motor Vehicle Report       ☒ Vehicle Authorization Form if IC not
                                                                                                  listed on vehicle registration

Submitted by Site Code # _____   Fax _____   Direct Phone _____
Name _____   Date _____
Email Address _____   for return of confirmation of coverage
DQT Email Address _____

---

**VI.**   **AJG CONFIRMATION OR DENIAL:** *To be completed by AJG Representative*

☐ Application ACCEPTED. Coverage effective _____

☐ Application DENIED due to: _____

Signature: _____   Phone: ▮▮▮▮▮▮▮ Date: _11 - 09 - 11_

## Please note an incomplete application will be returned and it will need to be re-submitted in its entirety.


**Velocity**express
real time delivery

## FAIR CREDIT REPORTING ACT DISCLOSURE AND AUTHORIZATION

As an applicant or during the course of your contract with Velocity Express Inc. ("VEI"), you are a "consumer" with rights under the Fair Credit Reporting Act (the "FCRA"). This disclosure and Authorization is provided to summarize your rights under the FCRA and to confirm your consent to allow VEI to obtain your motor vehicle records and any criminal records for the purpose of considering your questionnaire to perform courier services for VEI as an independent contractor.

PLEASE NOTE: THIS AUTHORIZATION IS TO OBTAIN YOUR MOTOR VEHICLE AND CRIMINAL RECORDS, WHICH THE FCRA DEFINES AS "CONSUMER RECORDS." THIS FORM IS <u>NOT</u> INTENDED TO OBTAIN YOUR CREDIT RECORDS UNLESS SPECIFICALLY NOTED.

The FCRA gives you specific rights designed to promote accuracy and fairness in consumer reports, as well as privacy of information that is to be used only for permitted purposes. Motor vehicle records and criminal background checks are "consumer reports," The FCRA permits VEI to obtain a consumer report from a consumer reporting agency for the purpose of (1) considering your questionnaire; (2) making a decision whether to engage your services; (3) deciding whether to continue your contract after you have been engaged by VEI as an independent contractor; or (4) making other decisions related directly to your services under the terms of your contract with VEI. The only consumer reports VEI will consider in making such decisions are your motor vehicle records and you criminal background checks.

Generally, your rights under the FCRA include (1) your right to be told if any information from a consumer report, is being used against you, together with contract information about the consumer reporting agency, including who has requested information from your file; (3) your right to dispute inaccurate information with the consumer reporting agency; (4) your right to seek damages from violators of the FCRA. You may request, in writing, additional disclosures regarding the nature and scope of any investigation requested and a written summary of your rights under the FCRA.

### AUTHORIZATION

By signing below, I, _____, hereby voluntarily authorize VEI to obtain either a consumer report or an investigative consumer report about me from a consumer reporting agency and to consider this information when making decisions concerning my contract with VEI. I further authorize VEI to release my reports to VEI customers I may service during my contract term if customer so requests or VEI is obligated to provide pursuant to contractual requirements. I understand that VEI. May obtain such reports at various times throughout the term of my contract for the purposes set forth above in this disclosure, including the evaluation of my eligibility to perform services as an independent contractor for VEI prior to engagement or at any time during the course of my contract with VEI. I understand that I have rights under the Fair Credit Act and acknowledge receipt of the Disclosure set forth above.

| | | |
|---|---|---|
| _Signature_ | ▓▓▓▓▓▓▓ | 06/06/66 |
| Applicant Signature | Social Security Number | DOB |
| ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ |
| Applicant Address | Drivers License Number | Phone # |

**Velocity** express
*real time delivery*

Location Number: _____     Driver Number: _____

Date: _11 - 09 - 11_     Driver Name: _Sarah Downey_

Reason for Deductions:

*New Driver Set-Up: _____     Current Driver Changes: _____     Terminated Driver: _____     Term Date: __/__/__ (required)

| Deductions | Data Driver Code | Start or Stop? | Effective Date | Expense Code | No. of Deductions (where applicable) | Amount of Each Deduction | Total of All Deductions | Comments |
|---|---|---|---|---|---|---|---|---|
| Option A: Admin Support Fee Class 1 | OPA | | | 523000 | Tenure | $27.05 $8.40 | | $27.05-Full Time / $8.40-Part Time |
| Option B: Admin Support Fee Class 2 | OPB | | | 523000 | Tenure | $27.05 | | $27.05 per week |
| Option C: Self Service Package | OPC | | | 523000 | One Time | See Comments | | $185.00 check attached |
| Option D: Part Time ($450.00 or less, weekly) | OPD | | | 523000 | Tenure | See Comments | | **POD-$8.40, PAF-$18.10,PVL-$33.00,PCL $9.65 (Standard Package, No Changes) |
| Occupational Accidental Injury Plan | OAF | | | 250037 | | $24.00 $18.10 | | $18.90 per week or until replaced by Occupational Accident or Worker's Compensation policy meeting Velocity contractual requirements |
| Cargo Loss Waiver Program (Full Time/Part Time) | CLW PCL | | | 524000 | | $19.25 $9.65 | | $19.25 per week Full Time or $9.65-Part Time until replaced by cargo insurance with $10,000 per occurance cargo insurance meeting contractual requirements |
| INSEL UNDER DISPATCH ONLY (PART TIME)** | PVL | | | 142710 | | $33.00 | | $33.00 per week / part time under dispatch commercial auto liability |
| Insel Under Dispatch Only  Tier One | VLL | | | 142710 | | $44.00 | | $44.00 per week (car, pick-up, minivan, cargo van) or until replaced by commercial insurance policy meeting contractual requirements |
| Insel Under Dispatch Only  Tier Two | VLM | | | 142710 | | $55.00 | | $55.00 per week (16' - 24' box or straight truck) or until replaced by commercial insurance policy meeting contractual requirements |
| Uniforms (additional orders only) | UNI | | | 250301 | | $25.00 | | $25.00 per week up to $100.00 purchase or Uniform Contract Agreement |
| Sub Driver Background Check & Drug Scn | DSP | | | 581000 | | $46.25 | | $185.00 deducted in 4 payments of $46.25 |
| Helper Background Check & Drug Screen | HLP | | | 581000 | | $40.00 | | $160.00 deducted in 4 payments of $40.00 |
| Cargo Claim | CIC | | | 646500 | | | | First $100 of claim with CLW or entire claim (varies depending on claim IC neglegence) |
| Driver Supplies / Set Up Fee | SUP | | | 596300 | | | | |
| Fines/ Tractor Trailer Penalties | FIN | | | 596500 | | | | |
| Scanner Lost/Stolen | LSS | | | 541000 | | See Comments | | $650.00 - $2,500.00 Replacement cost $150 - $250.00 -perdeduction |
| Scanner Rental (Full Time/Part Time) | SCN PSC | | | 542100 | | $18.00 $9.00 | | $18.00-Full Time /$9.00-Part Time |
| AIR TIME- Airclic Rental, (Full Time/Part Time) | ATC PAT | | | 542100 | | $8.00 $4.00 | | $8.00-Full Time/$4.00-Part Time |
| Processing Fee (For FCs and Purchase Transportation) | PF | | | 534000 | | 3.5% | | 3.5% per settlement |
| | | | | | | | | |

**DEDUCTION EXCEPTIONS:** Use this form when requesting an exception to the standard deductions. Exceptions will not be processed by the IC Settlement Team until all required approvals are obtained

| Deduction Exception Requested | standard fee | requested fee | effective date | # of weeks exempted | refund amount | comments |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

*Company policy states we only reimburse 60 day (8 weeks) back.*

A. Justification. Please explain the exception (s) requested above

_____

_____

B. If no Velocity Equipment is issued:

1. How is POD being accomplished? _____

2. What are your plans of transition to EPOD? _____

I authorize Velocity Express, Inc. to take weekly/biweekly *(Circle one)* deductions as set forth above.

_____
* IC Signature*

| Requestor: Location Driver Service Contact | Network Vice President | Date |
|---|---|---|
| | | |
| Authorized By: Location Management | Division President | Date |

*IC signature not required if terminating.*

*For deduction changes for an existing driver fax to the IC Payables Team at 713-346-9286*



## 2011 Independent Contractor Annual Uniform Package Order Form

Annual Package consists of:

- 5 Shirts (Choice of short sleeve shirts, long sleeve shirts or combination)
- 3 Pants (Choice of cargo shorts, cargo pants or combination)
- 1 Jacket (Choice of lightweight or heavyweight jacket)
- 1 Cap

Please ship the following uniform package:

| Uniform Item | Size | Quantity |
|---|---|---|
| Short Sleeve Shirt | L | 3 |
| Long Sleeve Shirt | L | 2 |
| Cargo Short | 34 X | 1 |
| Cargo Pant | 34 X 30 | 2 |
| Lightweight Jacket | L | 1 |
| Heavyweight Jacket | | |
| Cap | one size fits all | 1 |

CO # 314     OU# 8315          DRV # _____

Darah Doung
Independent Contractor Printed Name

_____          11-13-11
Independent Contractor Signature          Order Date
*********************************************************************************

_____          _____
Independent Contractor Signature          Receipt Date



## Uniform Package - Size Selection Questionnaire

**Driver Name:** _Sarah Doung_
**Driver Number:** _1_
**Location Name:** _Omni Lodi_
**Location Number:** _314-8315_

This questionnaire is required in order to place a uniform order with Passport International, Inc. The cost of the package is included in the weekly deduction of $25.75 under Options A & B. Advance Payment of $185 is required under Option C.

### The standard uniform package consists of 5 Shirts and 1 Cap

### Please Indicate Size Below

Unisex Sizes
5 Black Short-Sleeved Polo Shirts
1 Black Baseball Cap

| | S | M | L | XL | XXL | XXXL | XXXXL |
|---|---|---|---|---|---|---|---|
| | | | ✓ | | | | |
| One Size Fits All | | | | | | | |

☐ I wish to replace baseball cap with knit stocking cap



*A Public Service Agency*

THIS VALIDATED REGISTRATION CARD OR A FACSIMILE COPY IS TO BE KEPT WITH THE
VEHICLE FOR WHICH IT IS ISSUED. THIS REQUIREMENT DOES NOT APPLY WHEN THE
VEHICLE IS LEFT UNATTENDED. IT NEED NOT BE DISPLAYED. PRESENT IT TO ANY PEACE
OFFICER UPON DEMAND. IF YOU DO NOT RECEIVE A RENEWAL NOTICE, USE THIS FORM
TO PAY YOUR RENEWAL FEES OR NOTIFY THE DEPARTMENT OF MOTOR VEHICLES OF THE
PLANNED NON-OPERATIONAL STATUS (PNO) OF A STORED VEHICLE. RENEWAL FEES MUST
BE PAID ON OR BEFORE THE REGISTRATION EXPIRATION DATE OR PENALTIES WILL BE
DUE PURSUANT TO CALIFORNIA VEHICLE CODE SECTIONS 9552 - 9554.

EVIDENCE OF LIABILITY INSURANCE FROM YOUR INSURANCE COMPANY MUST BE PROVIDED
TO THE DEPARTMENT WITH THE PAYMENT OF RENEWAL FEES. EVIDENCE OF LIABILITY
INSURANCE IS NOT REQUIRED WITH REGISTRATION RENEWAL OF OFF-HIGHWAY VEHICLES,
TRAILERS, VESSELS, OR IF YOU FILE A PNO ON THE VEHICLE.

WHEN WRITING TO DMV, ALWAYS GIVE YOUR FULL NAME, PRESENT ADDRESS, AND THE
VEHICLE MAKE, LICENSE, AND IDENTIFICATION NUMBERS.

* * * * * * * * * * * * * *   DO NOT DETACH - REGISTERED OWNER INFORMATION   * * * * * * * * * * * * * *



*A Public Service Agency*

REGISTRATION CARD VALID FROM: 04/16/2011 TO: 04/16/2012

| MAKE | YR MODEL | YR 1ST SOLD | VLF CLASS | *YR | TYPE VEH | TYPE LIC | LICENSE NUMBER |
|------|----------|-------------|-----------|-----|----------|----------|----------------|
| TOYT | 2003 | 2003 | CZ | 2007 | 120 | 11 | |

| BODY TYPE MODEL | MP | MO | | VEHICLE ID NUMBER |
|-----------------|----|----|--|-------------------|
| 4D | G | SP | | |

| TYPE VEHICLE USE | DATE ISSUED | CC/ALCO | DT FEE RECVD | PIC | STICKER ISSUED |
|------------------|-------------|---------|--------------|-----|----------------|
| AUTOMOBILE | 03/23/11 | 39 | 03/23/11 | 8 | D4433842 |

PR EXP DATE: 04/16/2011

REGISTERED OWNER
CHOUP RONG

AMOUNT PAID
$   157.00

AMOUNT DUE                AMOUNT RECVD
$   157.00   CASH :
             CHCK :
STOCKTON                  CRDT :   157.00
CA            95210

LIENHOLDER
WACHOVIA DLR SVS INC
23 PASTEUR

IRVINE
CA            92618

H01   622 20 0015700 0025 CS   H01 032311 11   5CDB110 846

**Titan Insurance**

Policy Number ............. 006327772     Process Date ... 09/06/2012

Policy Period................. 10/02/2012 **Until** 10/02/2013 at 12:01 AM

07:14 AM at premises of Named Insured

Underwritten by: Victoria Fire & Casualty Company
22901 Millcreek Blvd., Cleveland, OH 44122-5728

| Named Insured | Agency: 8040055 |
|---|---|
| DOUNG, DARAH S | TITAN INSURANCE SALES |
| STOCKTON, CA 95207-7061 | 2701 EAST HAMMER LANE, STE 108 |
| | STOCKTON, CA 95210 |
| | (209)472-2200 |

**RENEWAL REVIEW:**

| Driver | Good Driver | Annl. Miles | Yrs. Exp | Birth Date | Age | M/S | Sex | SR22 | Acc | Viol |
|---|---|---|---|---|---|---|---|---|---|---|
| PRACH, SORYA | Yes | 7500 | 12 | 02/12/1984 | 28 | M | F | N | 0 | 0 |
| DOUNG, DARAH S | No | 7500 | 29 | 06/06/1966 | 46 | M | | N | 0 | 1 |

**Description of Covered Vehicles** (Insurance is provided where premium is shown and only if amounts of coverage up to the limit of liability.)

| Veh | Year | Description | Vehicle ID Number | Zip | Vehicle Use | Sym/Vehicle Type |
|---|---|---|---|---|---|---|
| 1 | 2003 | TOYOTA COROLLA | | 95207-3234 | P | TYCL44 |

| Coverages | Limits of Liability / Deductibles | Premium |
|---|---|---|
| | | **Veh 1** |
| BODILY INJURY LIABILITY | $100,000 EA PERSON $300,000 EA ACCIDENT | $382.00 |
| PROPERTY DAMAGE LIABILITY | $50,000 EA ACCIDENT | $250.00 |
| UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | $100,000 EA PERSON $300,000 EA ACCIDENT | $93.00 |
| COMPREHENSIVE $500 DEDUCTIBLE SUBSTITUTE TRANSPORTATION THEFT $15/DAY $450 MAX | | $115.00 |
| COLLISION $500 DEDUCTIBLE | | $511.00 |
| TOWING REIMBURSEMENT $75/DISABLE $450 MAX | | $11.00 |

| | |
|---|---|
| Total per Vehicle: | $1,362.00 |
| Policy Fee: | $48.00 |
| Fraud Recoupment Fee: | $1.80 |
| Total Fee(s): | **$49.80** |
| Total Premium and Fees: | **$1,411.80** |

**Your policy consists of this page and the following forms:**

| ALL | CA58TRA0011211 | 01 | CA58TRE0031211 | 01 | CA58TRE0061211 | 01 | CA58TRE0131211 |
|---|---|---|---|---|---|---|---|
| ALL | CA58TRP0011211 | | | | | | |

**Lienholder(LH), Additional Interest(AI), Additional Insured Lessor(IL), Premium Financed(PF), Waiver of Subrogation(WS)**

| Veh | Type | ID | Interest Name / Address |
|---|---|---|---|
| 1 | LH | 1 | WACHOVIA DEALER SERVICES, INC PO BOX 52044 PHOENIX AZ 85072 |

**Important Messages**

Bill Plan - 12 Mo 8.37% Dp 11 In EFT

**Important Notice**

Coverage may be subject to reduction to the minimum California Financial Responsibility Limits of $15,000 per person, $30,000 per accident, and $5,000 for property damage for any losses involving an unlisted or undisclosed permissive user of any insured car as defined by your policy. No coverage is provided for an Insured person while driving a Non-Owned Car as defined by your policy. If form number CA58TRE1171211 appears on the Declaration page, you may disregard this notice.

Underwritten by Victoria Fire & Casualty Company - 22901 Millcreek Blvd., Cleveland, OH 44122-5728
1-800-888-8424 Fax: 1-877-295-2923

**EXHIBIT "B"**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**PHILLIP FLORES** and **DARAH DOUNG,**
Individually and on behalf of all similarly
situated individuals,

Plaintiffs,

vs.

**VELOCITY EXPRESS, INC.,**
a Delaware corporation,

Defendants.

Case No.

Hon.

## CONSENT TO SUE

I state that I worked as a delivery driver for Velocity Express, Inc. at some point during the past three years, and during part of that time was required by Velocity Express to work in excess of 40 hours per week without receiving overtime compensation for the same.

I hereby consent to sue Velocity Express for damages including unpaid overtime premiums under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

I hereby designate Sommers Schwartz, PC and Johnson Becker, PLLC to represent me in this action.

Dated: _____ NOV 7 _____, 2012

Signed: _____ Phlp Fl~ _____

Name (Print): _____ Philip Flores _____

Address: _____ 1614 RHODE ISLAND AVE Stockton CA 95205 _____

1

EXHIBIT "C"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**PHILLIP FLORES** and **DARAH DOUNG,**
Individually and on behalf of all similarly
situated individuals,

Plaintiffs,

vs.

**VELOCITY EXPRESS, INC.,**
a Delaware corporation,

Defendants.

Case No.

Hon.

---

### CONSENT TO SUE

I state that I worked as a delivery driver for Velocity Express, Inc. at some point during

the past three years, and during part of that time was required by Velocity Express to work in

excess of 40 hours per week without receiving overtime compensation for the same.

I hereby consent to sue Velocity Express for damages including unpaid overtime premiums

under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

I hereby designate Sommers Schwartz, PC and Johnson Becker, PLLC to represent me in

this action.

Dated: _____11 - 0 8 - _____, 2012

Signed: _____

Name (Print): _____Darah S. Doung._____

Address: ___4401. Manchester Ave, Apt. 68 Stockton, CA 9520___

1