UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP FLORES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>VELOCITY EXPRESS, INC.,<br><br>    Defendant. | Case No. 12-cv-05790-JST<br><br>**AMENDED[1] ORDER CONDITIONALLY CERTIFYING COLLECTIVE ACTION, APPROVING PROPOSED CLASS NOTICE, AND APPOINTING INTERIM CLASS COUNSEL**<br><br>Re: ECF No. 26 |

Plaintiffs Phillip Flores and Darah Doung move to conditionally certify a collective action of Defendant Velocity Express, Inc.'s delivery drivers pursuant to the Fair Labor Standards Act (FLSA). After considering the moving papers, the arguments of the parties at the hearing held on May 16, 2013, and good cause appearing, the Court will grant the motion, approve the proposed class notice, and designate interim class counsel.

## I. BACKGROUND

Plaintiffs filed this FLSA collective action on November 9, 2012, on behalf of a proposed class of delivery drivers employed by Velocity who Plaintiffs allege were misclassified as independent contractors. ECF No. 1. The operative First Amended Complaint, ECF No. 15 ("FAC"), asserts five causes of action: violation of FLSA, 29 U.S.C. § 201, *et seq.* (failure to pay minimum wage); violation of FLSA, 29 U.S.C. § 201, *et seq.* (failure to pay overtime wages); violation of California Labor Code §§ 510, 1194 (failure to pay minimum wage and overtime); violation of California Labor Code § 226.8 (willful misclassification of individuals as independent

---

[1] This Order corrects an inconsistency in the class definition set forth on page 15 of the Order dated June 2, 2013, ECF No. 57.

contractors); and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. The present motion requests conditional certification of the proposed FLSA collective action and not class certification pursuant to Federal Rule of Civil Procedure 23 of based on the state law claims. As of the filing of the instant motion, the parties had not yet begun taking discovery. ECF Nos. 25, 26.

### A. The Independent Contractor Agreement

According to the First Amended Complaint, Velocity employs delivery drivers, including Plaintiffs, who deliver packages on routes assigned to them by Velocity. FAC ¶ 23, 29. Velocity requires delivery drivers to sign an "Independent Contractor Agreement for Transportation Services" ("IC Agreement"), which states that Velocity's delivery drivers are independent contractors. Id. ¶ 24; Ex. A. The IC Agreement submitted with the First Amended Complaint, signed by Plaintiff Doung and dated October 1, 2011, appears to be a form contract; the bottom of each page of the IC Agreement contains the footer "IC Agreement 2009 Master." The Agreement recites that the independent contractor "shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of" Velocity. Id. Ex. A ¶ 1 ("IC Agreement"). Velocity in turn "agrees and acknowledges that it shall have no right to direct or control the details or methods by which the Contractor performs its services hereunder, and that [Velocity] shall be concerned only with the results accomplished by the services performed by the Contractor and not with the means with which those results are accomplished." Id.

In a paragraph titled "Contractor's Control of Services Provided," the IC Agreement states that Velocity "may, from time to time in its sole discretion, based on customer requirements, request the Contractor perform courier or delivery services by advising it of the place and time of the customer requested pick-up, the destination of the delivery, and any completion schedules and specifications being requested by the customer. The Contractor shall have the right to decline or accept any such request." IC Agreement ¶ 3. That paragraph permits drivers to "select the route or routes to be taken" and leaves all other matters relating to the delivery in the discretion of the driver, provided the package is delivered within the time frame specified by Velocity and the work conforms and meets the "general contractual standards and approval of [Velocity's] customers."

Id.

The IC Agreement further provides that drivers will supply their own vehicles, and shall be responsible for all costs and expenses, including the cost of liability insurance, cargo insurance, worker's compensation premiums, signage with Velocity's logo on it, Velocity uniforms, and equipment necessary to handle and deliver the packages. Id. ¶¶ 8, 9, 11–13. Each of those items may be purchased through Velocity or an existing contract Velocity has with an insurance carrier by deducting the cost of the items from the driver's pay. Id. For example, Addendum D to the IC Agreement attached to the complaint shows that Plaintiff Doung was provided with a scanner, stylus, holster, repair unit, gate card, ID Badge, vehicle signs, and a car charger, and Velocity deducted an amount not specified in the addendum from his "weekly settlement" "for the associated rental, airtime, repair and replacement costs." Drivers must also procure the necessary licenses and permits at their own expense. Id. ¶ 14.

The IC Agreement contains few standards relating to the handling and delivery of packages. It provides, for example, standards relating to substance abuse and driver qualification. Id. ¶ 16. It also requires the driver to "wear the appropriate uniform at all times while performing services under" the Agreement. Id. ¶ 12.

The IC Agreement advises drivers that, as independent contractors, they are responsible for paying their own income and payroll taxes; paragraph 7 of the Agreement states, in part, that the driver agrees "to maintain sufficient records to enable [Velocity] to determine that the Contractor has satisfied its obligation to pay such taxes and other payments . . . . Upon written request Contractor shall provide [Velocity] a copy, which evidences that such taxes have been promptly paid, including but not limited to, cancelled checks, receipts or government forms such as Employment Development Department Form DE-8." Id. ¶ 7.

Finally, the IC Agreement provides that it can be terminated by either party upon fourteen days prior written notice, or alternatively, upon five calendar days' notice by Velocity "in the event [Velocity] determines in its sole discretion that any route or routes being serviced by the Contractor hereunder do not meet the financial or budget objectives of [Velocity]." Id. ¶ 18(b).

### B. First Amended Complaint

The First Amended Complaint alleges that Velocity signed thousands of independent contractor agreements with its delivery drivers when, in reality, they were employees. Plaintiffs allege that "[t]here are no material deviations in job duties or descriptions for [Velocity's] drivers from location to location." FAC ¶ 25. Velocity employs "uniform pay practices" with respect to each driver. Id. ¶ 26. In contrast to the requirements of the IC Agreement, Plaintiffs also allege that Velocity "deducts a percentage of each driver's income from each paycheck in order to pay the drivers' respective 'quarterly estimated Federal Income and Self-Employment Taxes.'" Id. ¶ 27.

The First Amended Complaint also alleges that Velocity exercises control over its delivery drivers in the following ways: requiring drivers to arrive one to two hours early to the package warehouse to sort the packages to be delivered that day; assigning routes to drivers based on geography or specific customers; providing drivers with "route sheets" with suggested "stop times;" requiring drivers to call a company dispatcher at certain times to verbally verify package deliveries; requiring drivers to submit written verifications of deliveries; and requiring drivers to wear uniforms and display Velocity signage on delivery vehicles. Id. ¶¶ 28–32. Plaintiffs allege that drivers "do not have a meaningful opportunity to bid for their routes or to negotiate the rates they will be paid for their routes." Id. ¶ 29. The route assignments create long, twelve to fourteen hour workdays while also preventing drivers from taking breaks as well as from working for other companies, even though the IC Agreement permits drivers to do so. Id. ¶ 33.

Plaintiffs allege these practices prompted the U.S. Department of Labor to initiate an enforcement action against Velocity's predecessor, which filed for bankruptcy in 2009, contending the company misclassified its delivery drivers as independent contractors. Id. ¶ 39 (citing Solis v. Velocity Express, Inc., No. 09-cv-0864-MO (D. Ore. 2009)).

### C. Declarations

With their motion, Plaintiffs each submitted sworn declarations, both of which state that they regularly worked more than forty hours a week and more than eight hours a day; that they were required to be on call twenty-four hours a day to take additional routes; that they had no

4

control over the routes they were assigned, that they were required to wear uniforms; that Velocity deducted from their weekly paychecks quarterly estimated Federal Income and Self-Employment taxes; that they were not paid overtime wages; and that they are aware of other employees subject to the same policies and practices complained-of in suit. See ECF No. 26, Exs. C (Doung Decl.), D (Flores Decl.).[2]

Also attached to Plaintiffs' motion is a "VEXP [Velocity] Income Tax Deduction Authorization Form" signed by Plaintiff Doung on October 1, 2011, the day the IC Agreement was signed. The form contains an acknowledgment that independent contractors are responsible for paying all income and payroll taxes, and provides: "To assist in payment of my Federal Income and Self-Employment taxes, I authorize VEXP to deduct 3% from my gross commissions at each settlement period and to set this amount aside to my credit for the payment of my quarterly estimated Federal Income and Self-Employment taxes." The percentage is handwritten; the form recommends 8–10% deductions of "gross commissions" for courier drivers and provides that a blank form will result in a default 8% deduction. The form also states that the funds will be held in escrow and paid to the Internal Revenue Service; the driver is not permitted to withdraw funds from the account.

Defendant submitted the declaration of Angie Wheeler, Velocity's National Driver Services Manager. ECF No. 44-1. The Wheeler declaration states that Velocity has contracted with more than five thousand "Owner-Operators" to provide delivery services in the last three years. Wheeler Decl., ¶ 7. Wheeler's declaration states that prior to September 2012, when it was discontinued, Velocity "offered a service whereby it would set aside, at an Owner-Operator's request, a specified percentage of the Owner-Operator's settlement payments from Velocity which could be used later by the Owner-Operators to pay their federal income and self-employment taxes." Id. ¶ 13. The declaration states that approximately ninety-four drivers took advantage of

---

[2] After the Defendants' opposition was filed, Plaintiffs also filed the declarations of Marquites Jolly and Tommy Rice. ECF Nos. 54, 55. Because these declarations were filed after the Defendants' opposition to the motion, the Defendants did not have an opportunity to respond to them, and the Court has not considered them in ruling on this motion.

1  the program. Id.

2  The Wheeler declaration itself attaches four of its delivery agreements: Plaintiff Flores' IC Agreement, dated and signed May 2, 2011, which is substantially identical to Plaintiff Doung's; Plaintiff Doung's IC Agreement; a "Fleet Contractor Agreement" executed by Conner Logistics on August 8, 2012; and a one-page undated "Rate Agreement: On-Demand or Distribution Rates" executed by Yellow Cab of Sacramento.

Velocity also submitted twenty declarations from its independent contractors, including the proprietors of Conner Logistics and Yellow Cab of Sacramento. Seven of those declarations were submitted by independent contractors who run businesses like Conner Logistics and Yellow Cab. The remaining thirteen were submitted by delivery drivers who were hired directly by Velocity. The declarations describe some of the differences among Velocity's deliver drivers. Some of the declarants work more than eight hours a day, and others less. Each of them state that they understood they were being hired as independent contractors, and that they had to pay their own income and payroll taxes. Some of them were able to negotiate higher rates for the routes they were assigned. Some of them were offered routes and turned them down. Some of them worked for other delivery companies while working for Velocity. Some wore uniforms for every delivery; others, just for certain customers.

## II.   LEGAL STANDARDS

The Fair Labor Standards Act provides that actions against employers for violation of its overtime and minimum wage requirements may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A suit brought on behalf of other employees is known as a "collective action," a type of suit that is "fundamentally different" from class actions. Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013) (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–70 (1989)). For example, unlike in class actions, members of a collective action must file a "consent to sue" letter with the court in which the action is brought — creating an opt-in class. 29 U.S.C. 216(b). Also different is that "'conditional certification' does not produce a class with an independent legal status, or join

6

additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." Id. (citing Hoffmann-LaRoche, 493 U.S. at 171–72.

Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffman-LaRoche, 493 U.S. at 170 (discussing collective action provision, 29 U.S.C. § 216(b), in context of ADEA claims). The judicial system also benefits through the "efficient resolution in one proceeding of common issues of law and fact arising from the same" unlawful activity. Id. Those benefits may only be realized through "accurate and timely notice concerning the pendency of the collective action, so that [employees] can make informed decisions about whether to participate." Id.; see also McElmurry v. U.S. Bank N.A., 495 F.3d 1136, 1139 (9th Cir. 2007). Courts have significant discretion in managing the notice process to ensure that employees receive notice in an "orderly, sensible" manner. Ultimately, notice "serve the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffmann-La Roche, 493 U.S. at 172.

### III. ANALYSIS

#### A. Conditional Certification

The majority of courts, including this district, apply a two-step approach to certification of collective actions. See, e.g., Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citing Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001) (comparing approaches and adopting two-step approach)); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (applying two-step approach); Wong v. HSBC Mortgage Corp. (USA), No. 07-cv-2446-MMC, 2008 WL 753889, at *2 (N.D. Cal. Mar. 19, 2008) (same).

In the first step, alternatively called the "notice stage" and "conditional certification," courts determine whether the plaintiff employees are sufficiently "similarly situated" to justify sending notice of the action to potential class members. In making that determination, "the court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Lewis, 669 F. Supp. 2d at 1127 (quotation omitted). "Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and

7

typically results in conditional class certification." Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004). See also Adams v. Inter–Con Sec. Sys., Inc., 242 F.R.D. 530, 536 (N.D. Cal. Apr.11, 2007) (recognizing "lenient" standard "based on the pleadings and affidavits submitted by the parties").

Only after notice is sent and discovery has closed do district courts move on to the second step, which requires a determination, usually prompted by a motion for decertification by the employer, whether the employees are "similarly situated" as measured by a "stricter standard." Id. (quoting Thiessen, 267 F.3d at 1102). That determination involves several factors, including the disparate factual and employment settings of the individual employees; the defenses available to the employer that apply to different employees differently; and fairness and procedural considerations. See Leuthold, 224 F.R.D. at 467; Wong, 2008 WL 753889, at *2. Even then, the standard courts apply is different, and easier to satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure 23(b)(3). Lewis, 669 F. Supp. 2d at 1127 (quoting Wertheim v. Arizona, No. 92-cv-453-PHX, 1993 WL 603552, *1 (D. Ariz. 1993) (requiring only "that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.").

Here, Plaintiffs ask this Court to take only the first step in the two-step process of certifying a FLSA collective action. Plaintiffs originally proposed the following class definition:

> All current and former delivery drivers of Velocity Express, LLC and DOES 1–10 who are or were employed to deliver goods to its clients at any time in the last three years, who worked over eight hours per workday or 40 hours per workweek, and were not paid a minimum wage or overtime for hours worked over 40 in a workweek or hours worked over 8 in a workday.

Plaintiffs have alleged, and Defendants do not dispute, that each individual delivery driver signed an independent contractor agreement, subjecting them to a uniform company policy of treating them as exempt workers under FLSA. Plaintiffs have also alleged, and averred in sworn declarations, that the delivery drivers were all required to wear Velocity uniforms, display the company logo, keep regular routes and hours, pay Velocity for equipment, permit Velocity to

deduct from their paychecks income and payroll taxes, and arrive at certain times in advance of their shifts. In other words, Plaintiffs have alleged that each member of the proposed class was "similarly situated" with respect to the material allegations of the complaint.

Defendant Velocity opposes conditional certification on three principal grounds. First, Velocity argues that conditional certification should be subject to the requirements of Rule 23 class actions. Second, Velocity argues that Plaintiffs' theory depends on the alleged misclassification of workers as independent contractors, and that this by itself is insufficient to state a claim for violation of FLSA. Third, Velocity argues that the proposed class is too diverse to be certified.

Turning to Velocity's first argument, Velocity states in its brief that "many California federal courts rule that it is proper to incorporate the stringent standards of Rule 23" to FLSA collective actions. Opp., ECF No. 43, p. 9. Notwithstanding its use of the word "many," Velocity cites just two cases, Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 482 (E.D. Cal. 2006), and Buckland v. Maxim Healthcare Servs., 11-cv-8414-JST, 2012 WL 3705263, at *3 (C.D. Cal. Aug. 27, 2012). Neither supports its position. The Romero court endorsed the two-step approach described above to conditionally certify a FLSA class. 235 F.R.D. at 482 ("The Court therefore will use the two-tiered approach taken by the majority of district courts to address the issue and taken previously by this Court."). The Buckland court merely looked to Rule 23's commonality requirement (but not its other requirements) in deciphering the meaning of "similarly situated," as other courts have done. However, the Buckland court also adopted the two-step approach described above and denied conditional certification because "the evidence Counsel submitted in support of this Motion is so lacking, and the proffered theories so inconsistent, that the Court cannot determine that those Nurses within the scope of the FLSA Nurse Collective Action were subject to a single illegal policy, plan or decision, or that there are others similarly situated to Nurse Plaintiffs." Buckland, 2012 WL 3705263, at *3 ("The majority of courts, including three circuit courts, have adopted the two-tiered approach. Likewise, this Court will use the two-tiered approach.") (citing Thiessen, 267 F.3d at 1102). In other words, Buckland denied conditional certification using the same standards urged by Plaintiffs, not the "hybrid Rule

23/FLSA collective action" approach claimed by Velocity.

In fact, courts have repeatedly rejected attempts like Velocity's to equate FLSA class actions and Rule 23 class actions because "Congress chose not to apply the Rule 23 standards to collective actions under the ADEA and FLSA, and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 would effectively ignore Congress' directive." Gerlach v. Wells Fargo & Co., 05-cv-0585-CW, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) (quotation omitted). See also Thiessen, 267 F.3d at 1102 (rejecting comparison to Rule 23); Hipp, 252 F.3d at 1219 (same); Beauperthuy v. 24 Hour Fitness USA, Inc., 06-cv-0715-SC, 2007 WL 707475, at *2 (N.D. Cal. Mar. 6, 2007) ("Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage."); Lewis, 669 F. Supp. 2d at 1127 ("[T]he court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan.") (quotation omitted). Simply put, "Rule 23 actions are fundamentally different from collective actions under the FLSA." Genesis Healthcare, 133 S. Ct. at 1529 (2013) (citing Hoffmann–La Roche, 493 U.S. at 177–178 (Scalia, J., dissenting)).

Velocity's second argument, that the misclassification of workers as independent contractors "involves a fact-intensive inquiry that does not lend itself to collective treatment," Opp., p. 12, also fails. The need for such an inquiry has not prevented courts, such as those cited above, from routinely certifying FLSA cases based on allegations and affidavits similar to those presented here. See, e.g., Wong, 2008 WL 753889, at *3 (conditionally certifying FLSA collective action based on allegations "suggesting there exists a uniformly-applicable basis for defendants' classification decision"); In re Wells Fargo Home Mortgage Overtime Pay Litig., 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007) (conditionally certifying FLSA collective action where plaintiffs alleged and averred "that Wells Fargo's policy and practice related to HMC compensation is uniform for all putative class members"); Gerlach, 2006 WL 824652, at *3 (conditionally certifying FLSA collective action where all employees "share a job description,

were uniformly classified as exempt from overtime pay by Defendants and perform similar job duties").

Velocity's third argument is that the alleged class is too diverse to be certified. In support of this argument, Velocity submits twenty declarations from owner-operators describing the differences in their relationships with Velocity, vis-à-vis each other and vis-à-vis the plaintiffs. Velocity misapprehends the question before the Court; the question at this stage is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing. The Court will consider "the disparate factual and employment settings of the individual plaintiffs" if and when Defendant makes a motion to decertify. Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004); see also Escobar v. Whiteside Const. Corp., 08-cv-01120-WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) ("It may be true that the evidence will later negate plaintiffs' claims, but this order will not deny conditional certification at this stage in the proceedings"); Lewis, 669 F. Supp. 2d at 1128 (rejecting defendant's 54 declarations raising factual issues because "[t]o apply the second-tier heightened review at this stage would be contrary to the broad remedial policies underlying the FLSA. After discovery is complete, Defendant can move for decertification, and the Court will then apply the heightened second-tier review.").

In addition to the foregoing concerns, Velocity, Plaintiffs, and the Court identified some problems with Plaintiffs' proposed class definition. First, at the hearing, based on Plaintiffs' Complaint, the papers submitted in support of their motion, and Defendant's arguments in opposition, Plaintiffs proposed limiting the class definition to the specific contract at issue: the 2009 Independent Contractor Master Agreement. Second, in response to Defendants' opposition, Plaintiffs also agreed to delete the reference to Defendants "DOES 1–10." Third, Defendants argued — and Plaintiffs conceded — that the reference to delivery drivers "employed" by Velocity is inappropriate. Finally, the Court notes that the Defendant in this case is incorrectly named in Plaintiffs' original proposed definition as Velocity Express, *LLC* and not *Inc.* The amended proposed class definition thus reads:

> All current and former delivery drivers of Velocity Express, Inc.

11

who signed the 2009 Master "Independent Contractor Agreement," and who have delivered goods to its clients at any time in the last three years, worked over eight hours per workday or 40 hours per workweek, and were not paid a minimum wage or overtime for hours worked over 40 in a workweek or hours worked over 8 in a workday.

With those modifications, and for the foregoing reasons, the Court GRANTS Plaintiffs' motion and hereby conditionally certifies a FLSA collective action class as defined above.

### B.   Production of Class Members' Identifying Information

Plaintiffs move to compel Velocity to provide a list of all potential class members with each person's full name, last known address, telephone number, and dates and locations of employment in order to facilitate Plaintiffs' notice efforts.[3]  Velocity opposes the request on the grounds that "(1) Plaintiffs have no need for the information; (2) the production of such information violates the privacy rights of such individuals; and (3) the scope of the request is exceedingly broad and unduly burdensome."

The first of these arguments — that Plaintiffs do not need the information — stems from Velocity's argument that no class should be conditionally certified.  As set forth above, the Court will grant conditional certification, and so this argument does not require further discussion.

Velocity's second argument is that the production of that information would violate the drivers/owner-operators' rights under First, Third, Fourth, Fifth, and Ninth Amendments to the Constitution.  This argument flies in the face of decades of settled authority on the production of class member identifying information.  See, e.g., Hoffmann-LaRoche, 493 U.S. at 170 (district courts have the authority to compel the production of names and addresses of employees for purposes of facilitating notice in collective actions against employers); Lewis, 669 F. Supp. 2d at 1128 ("The Court finds that providing notice by first class mail and email will sufficiently assure that potential collective action members receive actual notice of this case.  Defendant's objection to the production of email addresses is baseless."); Wong, 2008 WL 753889, at *4 (ordering production of names, addresses, telephone numbers, dates and locations of employment, employee

---

[3] Velocity argues in its opposition that it should not be required to produce email addresses, but Plaintiffs do not appear to have requested email addresses.  Compare, Opp., p. 19 with Mot., ECF No. 26, p. 11.

numbers, and last four digits of employee social security numbers).

The only case Velocity cites in support of its privacy arguments, Pioneer Electronics (USA), Inc. v. Superior Court, 128 Cal. App. 4th 246, 27 Cal. Rptr. 3d 17, 21 (2005), is not helpful. The Court of Appeal's opinion in Pioneer was vacated by the California Supreme Court and its privacy holdings were substantially undermined. See Pioneer Electronics v. S.C. (Olmstead), 40 Cal. 4th 360 (2007). Moreover, the issue in Pioneer was potential class members' rights with regard to *pre*-certification notices, not post-certification notices such as the ones at issue here.

Velocity then argues that the court must "balance" the rights of class members with Plaintiffs' need for the information, citing several decisions from outside the Ninth Circuit. All of the decisions relate to the production of identifying information *prior* to certification. See Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995) aff'd sub nom. 114 F.3d 1202 (11th Cir. 1997) (denying request for discovery of employee information because conditional certification was denied); Mackenzie v. Kindred Hospitals E., L.L.C., 276 F. Supp. 2d 1211, 1221 (M.D. Fla. 2003) (same); Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 313 (D. Colo. 1998) (denying discovery generally, not employee identifying information, before motion for conditional certification was decided, based on grounds other than privacy interests). These cases also are not helpful.

The Court will order Velocity to produce a list of potential class members, including the full name, last known address, and telephone number of each, along with their dates and locations of employment.

**C. Notice**

Velocity objects to Plaintiff's proposed form of notice on four grounds: (1) the opt-in form should require the individual to include his or her actual dates of service; (2) the notice should require opt-in within 45 days instead of 90; (3) the notice should not include the case caption; and (4) the notice's description of the lawsuit should include a statement that Velocity denies any and all liability.

As to the first bullet point, the Court sees no reason why Velocity's former and current

13

delivery drivers should identify their dates of service on their opt-in forms. As set forth above, Velocity will be producing this information to Plaintiffs.

Nor does Velocity provide any reason for limiting the opt-in period to 45 days. Lengthier opt-in periods are not uncommon. See, e.g., Lewis, 669 F. Supp. 2d at 1129 (seventy-five day deadline).

The Court also approves the inclusion of the case caption at the top of the notice form. "[N]otices typically contain a court caption." Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 540 (N.D. Cal. 2007).

With regard to Velocity's request that the notice include a statement that Velocity denies any and all liability, the Court notes that the notice contains such a statement, but not until page two. The Court will order (1) that this sentence appear on the first page of the notice; and (2) that the notice also contain a new, second paragraph, in boldface, stating as follows: "Please note that the Court has not ruled on the merits of the lawsuit. The Court has only ruled that it is important that you be notified of the existence of the lawsuit so that you can determine whether you wish to join it."

The Plaintiffs are also ordered to amend the sentence that currently reads:

> Plaintiffs' attorneys will be compensated by the greater of either a forty (40%) percent contingent fee of all sums recovered by settlement, award, court-ordered attorney's fees, or judgment, or whatever attorneys fee is awarded by the Court or obtained/negotiated through a settlement. The Court must approve any fees received by the Plaintiffs' lawyers.

to read instead:

> Plaintiffs' attorneys will request to be compensated by as much as forty (40%) percent contingent fee of all sums recovered by settlement, award, court-ordered attorney's fees, or judgment. The Court must approve any fees received by the Plaintiffs' lawyers.

The Court has independently reviewed the proposed notice and opt-in forms and finds that they comport with the applicable legal standards in all other respects. Assuming Plaintiffs revise the proposed notice form to reflect the amended class definition, the foregoing comments, and the reassignment of this action to this Court, Plaintiffs' proposed form of notice is hereby

14

APPROVED.  Plaintiffs' requested opt-in period of ninety days is also APPROVED.

### D.     Interim Class Counsel

Federal Rule of Civil Procedure 23(g)(3) authorizes district courts to designate interim counsel to act on behalf of a putative class before the final certification decision is made.  Rule 23(g)(1)(A), which applies to the appointment of class counsel, is also instructive in evaluating interim class counsel.  See In re CRT Antitrust Litig., No. 07-cv-5944-SC, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008).  In making the determination, courts must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Here, the Court finds that each element is satisfied.  Plaintiffs' counsel represent clients in multiple states, have expended resources investigating the case, drafting the complaint, and briefing this motion, and have identified the claims at issue.  Counsel's submissions evidence sufficient experience in handling complex litigation to adequately represent the class, and the briefing before the Court establish the requisite knowledge of applicable law.  Finally, counsel have already committed resources to representing the class, and there is no suggestion that this will not continue to be the case.

Consequently, the Court DESIGNATES Johnson Becker, PLLC and Sommers Schwartz, P.C. as Interim Class Counsel.

## IV.    CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The class defined as: "All current and former delivery drivers of Velocity Express, Inc. who signed the 2009 Master "Independent Contractor Agreement," and who have delivered goods to its clients at any time in the last three years, worked over eight hours per workday or 40 hours per workweek, and were not paid a minimum wage or overtime for hours worked over 40 in a workweek or hours worked over 8 in a workday." is hereby conditionally certified.

2. Plaintiffs' proposed form of notice is hereby APPROVED, provided the final form of notice reflects the amended class definition, the reassignment of this action to this Court, and the alterations discussed above.

3. Johnson Becker, PLLC and Sommers Schwartz, P.C. are hereby DESIGNATED Interim Class Counsel. Interim Class Counsel shall keep records of their time and costs consistent with the professional standards expected of class counsel, and shall ensure the efficient and productive expenditure of time and costs in prosecuting the action.

4. Defendant shall provide Interim Class Counsel, within thirty days of the date of this Order, with a list of potential class members, in Microsoft Excel or similar digital format, identifying each person by full name and last known address, telephone number, and dates and locations of employment.

5. Interim Class Counsel shall mail class notice to each person on the class list no later than thirty days from the date of receipt of the class list from Defendant.

6. Interim Class Counsel shall attempt to locate current addresses for any individual for whom a notice mailing is returned as undeliverable and shall promptly mail the notice documents to the current address. Interim Class Counsel shall keep a record of the addresses that it updates and the dates on which those notices were sent to those addresses. Interim Class Counsel shall not be required to mail notice to any particular individual more than three times.

7. The members of the conditionally certified class shall have ninety days from the initial mailing of the Notice and Consent to Join forms to postmark their Consent to Join forms and mail or otherwise send such Consents to Interim Class Counsel for filing.

**IT IS SO ORDERED**.

Dated: June 7, 2013

_____
JON S. TIGAR
United States District Judge