UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP FLORES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TFI INTERNATIONAL INC., et al., <br><br> Defendants. | Case No. 12-cv-05790-JST <br><br> **ORDER GRANTING MOTION FOR COLLECTIVE ACTION SETTLEMENT AND ATTORNEYS' FEES AND COSTS** <br><br> Re: ECF Nos. 326, 329, 341 |

Before the Court is Plaintiffs Philip Flores and Darah Duong's "Unopposed Motion for Approval of Joint Stipulation of Settlement, and Attorneys' Fees and Costs" in this Fair Labor Standards Act ("FLSA") collective action. ECF No. 326. Plaintiffs have also filed an unopposed administrative motion to file a document under seal. ECF No. 329. The Court will deny the motion to seal and grant the motion for settlement approval and fees and costs.[1]

## I. BACKGROUND

### A. The Parties and Claims

The factual background of this litigation is set forth in greater detail in the Court's prior order granting partial summary judgment. *See* ECF No. 260. In brief, Plaintiffs claim that Defendants TFI International Inc., TForce Final Mile, LLC, and Velocity Express, LLC,[2] misclassified Velocity Express delivery drivers – including Plaintiffs – as independent contractors, thereby depriving them of minimum wages and overtime. *See* ECF No. 140 (Fourth Amended

---

[1] The Court also denies as moot the parties' joint administrative motion to set a case management conference. ECF No. 341.

[2] In 2012, Velocity Express was purchased by TFI International and TForce Final Mile, then operating as Transforce, Inc. and Dynamex Operations East, Inc., respectively. ECF No. 260 at 1-2.

Complaint, or "FAC") ¶¶ 85, 93. Though Velocity Express required its drivers to sign an Independent Contractor Agreement," it nonetheless exerted substantial control over the drivers' work. ECF No. 260 at 2-4.

**B.  Procedural History**

On November 9, 2012, Plaintiffs filed this lawsuit as a putative collective action under the FLSA and putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, alleging violations of the FLSA, the California Labor Code, and California's Unfair Competition Law. *See* ECF No. 1.

On June 3rd, 2013, the Court granted Plaintiffs' motion to conditionally certify a FLSA collective action for the following class[3]:

> All current and former delivery drivers of Velocity Express, LLC who signed the 2009 "Independent Contractor Master Agreement," and who are or were employed to deliver goods to its clients at any time in the last three years, who worked over eight hours per workday or 40 hours per workweek, and were not paid a minimum wage or overtime for hours worked over 40 in a workweek or hours worked over 8 in a workday.

ECF No. 58 at 15. The Court approved a modified version of the proposed notice and consent form for additional class members to opt in to the litigation. *Id.* at 16.[4]

Velocity Express went defunct in December 2013, effectively ceasing operations. ECF No. 150-1 ¶ 10. The Court subsequently granted partial summary judgment in favor of Plaintiffs, holding that Dynamex Operations East (now TForce Final Mile) was a successor to Velocity Express's potential FLSA liability. ECF No. 176 at 12.

In September 2015, the Court approved a bellwether trial process to resolve whether Velocity had misclassified its drivers. ECF No. 188. The parties selected two individual Plaintiffs, James Mack and Claude Boconvi, as the bellwether plaintiffs for these trials. ECF Nos.

---

[3] The Ninth Circuit recently addressed in some detail the reasons why terms borrowed from Rule 23 class action practice create confusion when applied to collective actions, due to functional differences between the two mechanisms. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1099-1102 (9th Cir. 2018). The Court will follow the Ninth Circuit's lead, and "[d]espite the imprecision, . . . will adhere to the terms commonly used in collective action practice, as the terms are now widespread." *Id.* at 1102.

[4] Plaintiffs never sought to certify a Rule 23 class action for their state-law claims.

2

224, 226. The Court selected a third bellwether plaintiff, Charles Chambers. ECF No. 237.

On April 24, 2017, the Court granted Plaintiffs' motion for partial summary judgment, finding that Mack, Boconvi, and Chambers were Velocity Express employees as a matter of law, rendering Defendants liable under the FLSA. ECF No. 260 at 34. The Court also found that Mack was an employee under California law. *Id.*

On June 6, 2017, rather than go to trial on damages, the parties stipulated to $2,500 in damages for Boconvi and $60,000 for Mack. *See Boconvi v. Velocity Express*, 17-cv-2623-JST, ECF No. 35.[5] The Court awarded Plaintiffs' counsel $2,124,031.14 in attorneys' fees and $136,575.60 in costs for work related to Boconvi's and Mack's cases. *See Boconvi*, 17-cv-2623-JST, ECF No. 82. Defendants appealed the *Boconvi* judgment to the Ninth Circuit, where it is currently pending. *Boconvi*, 17-cv-2623-JST, ECF No. 87.

Having resolved the questions of liability, the parties jointly proposed to resolve the remaining Plaintiffs' claims through a series of six trial tranches; the Court approved the proposal in January 2018. *See* ECF Nos. 297, 300, 303.

The parties represent that they had previously twice attempted to mediate their claims with the assistance of Mark Rudy, but those attempts were unsuccessful due to outstanding issues regarding liability. ECF No. 326 at 11. The parties engaged in a third round of mediation during discovery for the Tranche 1 Plaintiffs, including an all-day mediation session and multiple follow-up conferences, resulting in the Settlement before the Court. *Id.*

On October 26, 2018, Plaintiffs filed this unopposed motion for settlement approval. *See* ECF No. 326. The Court heard argument on the motion on November 15, 2018. ECF No. 334. At the hearing, the Court expressed the concerns about the proposed settlement identified later in this order. To respond to these concerns, the parties filed a supplemental joint statement on November 28, 2018, ECF No. 336, supported by a further declaration from Plaintiff's counsel, ECF No. 337. Plaintiffs' counsel then filed a further supplemental declaration in support on December 17, 2018. ECF No. 338. On January 25, 2019, Plaintiffs' counsel filed yet a further

---

[5] The Court granted Defendants' motion to dismiss Chambers from the litigation for failure to prosecute when he did not respond to requests to appear for trial. ECF No. 291.

3

declaration, detailing counsel's efforts at notice to members of the collective action and the response by participating drivers. ECF No. 340.

### C. Overview of the Settlement Agreement

Under the terms of the Settlement, Defendants agree to pay a maximum amount of $4,750,000. ECF No. 327-1 at 14. The Settlement allocates that amount as follows: (1) $1,850,000 for participating Plaintiffs (the "Claims Amount"), *id.* at 5-6; and (2) $2,900,000 for Plaintiffs' counsel's attorneys' fees and costs, including the costs of administering the Settlement, *id.* at 14, 18. The Claims Amount will first be used to satisfy the $62,500 judgment the Court awarded to Boconvi and Mack. *Id.* at 9. In addition, 13 percent of the Claims Amount, or $240,500, will be allocated to the subset of participating Plaintiffs who provided services in California, in exchange for the release of their California law claims. *Id.* at 6. The remaining $1,547,000 will be allocated to all participating Plaintiffs. *Id.* The Claim Share of each participating Plaintiff (both as to the California-specific and general amounts) will be determined in proportion to the number of weeks worked by that Plaintiff during the qualifying period. *Id.*[6] Plaintiffs' counsel have calculated the number of qualifying weeks for each Plaintiff using data provided by Defendants. ECF No. 327 ¶ 6; *see also* ECF No. 327-2.

Defendants also agree to dismiss the pending appeal of the *Boconvi* action. *Id.* at 19.

In exchange, Plaintiffs agree to release the following claims:

> [F]or the duration of the Settlement Period, all claims that were pled in the *Flores* Action, including claims for failure to pay all minimum wages (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*); failure to pay all overtime wages (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*); failure to compensate for all hours worked (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*), liquidated damages under 29 U.S.C. § 216(b), failure to pay minimum wages and overtime under California Labor Code Sections 510, 1194, and Industrial Welfare Commission (IWC) Order No. 9, willful misclassification of individuals as independent contractors in violation of California Labor Code § 226.8, failure to provide meal periods in violation of California Labor Code §§ 226.7, 512, and IWC Wage Order No. 9, failure to reimburse business

---

[6] The Settlement defines this period as the date each Plaintiff opted into the litigation, "going back a period of three years plus an additional eleven weeks consistent with the Court's Minute Order [tolling the statute of limitations, ECF No. 67,] dated August 19, 2013 plus any additional weeks of service the [Plaintiff] engaged in after" opting in. ECF No. 327-1 at 6.

4

> expenses in violation of California Labor Code § 2802, failure to furnish accurate wage statements in violation of California Labor Code §§ 226, 226.3, and IWC Wage Order No. 9, failure to keep accurate payroll records in violation of California Labor Code §§ 1174, 1174.5, and IWC wage order No. 9, failure to pay wages upon termination in violation of California Labor Code §§ 201-203 (i.e., waiting time penalties), allegedly unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of § 17200 et seq. of California's Business and Professions Code, and any claims under state or federal law seeking substantially the same recovery (e.g., lost wages, unreimbursed expenses, or penalties) as secured by the above-referenced statutory claims. The . . . Released Claims further encompass all damages or recovery that might be sought under these claims including but not limited to requests for injunctive relief, actual or statutory damages, attorneys' fees and costs, or pre- or post-judgment interest.

*Id.* at 7.

The Settlement requires each Plaintiff to affirmatively opt to participate and establishes a process for securing their participation. By October 25, 2018 – one day prior to filing this motion with the Court – Plaintiffs' counsel mailed each Plaintiff notice of the Settlement. *Id.* at 15; ECF No. 327 ¶ 7. The Settlement provides that each Plaintiff must respond in writing by November 14, 2018 – twenty-one days later – expressing the intent to (1) participate in the Settlement ("Participating Drivers"); (2) opt out of the Settlement ("Non-Participating Drivers"); or (3) "challenge the number of weeks allocated" to that Plaintiff ("Challenging Drivers"). ECF No. 327-1 at 15. There is no mechanism for Plaintiffs to object to any other terms of the Settlement.

If a Challenging Driver's dispute is not resolved by November 15, 2018, the Settlement provides that the Court will adjudicate each challenge. *Id.* at 15-16. Any Plaintiff whose challenge is not resolved in their favor will be "deemed a Non-Participating Driver" and excluded from the Settlement. *Id.* at 16.

Finally, the Settlement contemplates a fourth class of Plaintiffs: those who fail to timely respond to the mailed notice by November 14, 2018 ("Absentee Participating Drivers"). *Id.* at 7. Those Plaintiffs shall have an additional thirty days, until December 14, 2018, to respond. *Id.* at 16. The Settlement does not allow these Plaintiffs to challenge their individual share. *Cf. id.* For those Plaintiffs who fail to respond within this fifty-one-day period, "the Court shall, on December 17, 2018, enter an order administratively dismissing the claim of that Absentee Participating Driver." *Id.* at 16.

Any Non-Participating Driver's share of the Claims Amount will be "ratcheted back" by Defendants and subtracted from the Settlement fund. *Id.* at 17. However, any dismissed Absentee Participating Driver's share will be reallocated among the participating Plaintiffs. *Id.* If 5 or more of the 367 Plaintiffs become Absentee Participating Drivers, Challenging Drivers, or Non-Participating Drivers, then Defendants may withdraw from the Settlement by December 17, 2018. *Id.* at 17.

In the event that the Settlement is funded, checks will be sent to participating Plaintiffs. *Id.* Those checks must be cashed within ninety days; the funds of any uncashed checks will be reallocated to a *cy pres* recipient designated by the Court. *Id.*

As events unfolded, many of these provisions became superfluous. By November 13, 2018, 357 of 367 of the opt-in plaintiff drivers had consented to participate in the Settlement (and two additional drivers had already had their claims adjudicated by the Court). ECF No. 333 at 5. Of the remaining eight drivers, two agreed to dismiss their claims with prejudice and not participate, *id.*; one driver died with no identifiable heirs, *id.*; and one driver was in bankruptcy proceedings, and the trustee verbally consented to the Settlement and stated an intention to seek approval from the bankruptcy court, *id.* The remaining four drivers had not responded by November 13, 2018. *Id.* Between November 13, 2018 and December 17, 2018, three of the remaining drivers contacted Plaintiffs' counsel to consent to the settlement. ECF No. 338. As for the one remaining driver, Plaintiffs' counsel made at least 20 attempts to contact him using priority mail and telephone, including leaving messages on a verified telephone number in both English and Spanish. That driver did not respond in any way to these efforts. Plaintiffs' counsel has stated an intention to move to withdraw as counsel for that driver.

No driver has challenged the terms of the Settlement.

## II. MOTION TO SEAL

In connection with the motion for settlement approval, Plaintiffs have filed an administrative motion to file under seal the notice that Plaintiffs' counsel sent to each Plaintiff to alert them to the Settlement and their window to participate. *See* ECF No. 329. Plaintiffs contend that the notices are attorney-client privileged communications. *Id.* at 2. Plaintiffs have filed a

declaration in support of sealing. ECF No. 329-1.

A party seeking to seal a document filed with the court must (1) comply with Civil Local Rule 79–5; and (2) rebut a "strong presumption in favor of access" that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).

With respect to the first prong, Local Rule 79-5 requires, as a threshold, a request that (1) "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law"; and (2) is "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). An administrative motion to seal must also fulfill the requirements of Local Rule 79-5(d). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).

With respect to the second prong, the showing required for overcoming the strong presumption of access depends on the type of motion to which the document is attached. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citation omitted) (quoting *Kamakana*, 447 F.3d at 1178). To overcome this strong presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal quotation marks and citations omitted).

On the other hand, records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Instead, a party need only make a showing under the good cause standard of Rule 26(c) to justify the sealing of the materials. *Id.* at 1097. A court may, for good cause, keep documents confidential "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Because the parties' motion is more than tangentially related to the merits of the case, the

7

compelling reasons standard applies. "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Plaintiffs' counsel asserts as the basis of confidentiality that the notice communications are protected by the attorney-client privilege. "Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (quoting *United States v. Bauer,* 132 F.3d 504, 510 n.4 (9th Cir.1997)). The Ninth Circuit has adopted Professor Wigmore's eight-part test to determine whether a communication is privileged:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citing 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961). "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Id.* at 999-1000.

Here, the Court cannot conclude that the notice documents to individual drivers are privileged because Plaintiffs' counsel shared them with Defendants when they filed their motion to seal. ECF No. 329-3. "Under the attorney-client privilege, it is a general rule that attorney-client communications made 'in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.'" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quoting 1 Paul R. Rice, Attorney-Client Privilege in the United States § 4:35, at 195 (1999 ed.)).

Accordingly, the motion to seal is denied. The Clerk is ordered to file the documents on the public docket.

## III. LEGAL STANDARD

### A. Authority to Review

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). The statute provides that collective actions against employers may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). These collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

"Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citing *Sperling*, 493 U.S. at 177-78). While class members in a Rule 23 class action may be bound by a judgment without their consent, members in a collective action must expressly opt in to the collective action by written consent. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see* Fed. R. Civ. P. 23. Further, while Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy, there is no such statutory requirement in the FLSA. *See* Fed. R. Civ. P. 23(e)(2).

But under the FLSA, an employee's right to fair payment "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (internal quotation marks omitted); *see also Genesis Healthcare Corp.*, 569 U.S. at 69 ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."). Accordingly, courts in this district and this circuit have followed the Eleventh Circuit's holding that FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *see also Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683

(9th Cir. 2015)[7]; *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1 (N.D. Cal. June 22, 2017); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 12643008, at *3 (N.D. Cal. Dec. 26, 2014).

### B. Standard of Review

The Ninth Circuit has not established the criteria that a district court must consider in determining whether a collective action settlement agreement under 29 U.S.C. § 216(b) warrants approval. Most courts evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."[8] *See Lynn's Food Stores*, 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## IV. DISCUSSION

### A. Bona Fide Dispute

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Nen Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak*, 2017 WL 2688224, at *2.

Here, there are "legitimate questions about the existence and extent of [Defendants'] FLSA liability." *Gonzalez v. Fallanghina, LLC*, No. 16-CV-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017). The Court has ruled in favor of Plaintiffs on the question of successor

---

[7] Pursuant to Ninth Circuit Rule 36-3, *Seminiano* is not precedential. Nevertheless, the Court uses it as persuasive authority.

[8] *See, e.g.*, *Slezak*, 2017 WL 2688224, at *2; *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey*, 2014 WL 12643008, at *3; *Nen Thio v. Genji*, *LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

liability, ECF No. 176, and on the questions whether Defendants misclassified their employees as independent contractors, and did so willfully, ECF No. 260. Those questions are currently on appeal to the Ninth Circuit. If the Ninth Circuit reverses the Court's holding on successor liability, Plaintiffs will not be able to recover damages. If the Ninth Circuit reverses the Court's holdings on misclassification, Plaintiffs will need to attempt to establish those points through full trials on the merits. Accordingly, there remains a bona fide dispute as to Plaintiffs' right to damages. *See Slezak*, 2017 WL 2688224, at *2 (finding a bona fide dispute over liability where "at the time of settlement it was unclear whether certioriari would be granted in [the controlling Ninth Circuit precedent] and whether [the case] would eventually be overturned").

The parties also dispute the extent of Defendants' liability, i.e., the amount of overtime damages compensable for each Plaintiff. Defendants estimate that, assuming liability, they owe $363,029 total in overtime wages to all Plaintiffs. ECF No. 327-4 at 1. Plaintiffs calculate more than four times more in liability, with a total of $1,476,910.45. ECF No. 327-5 at 1. The parties attribute this gulf to the ongoing dispute as to the amount of unpaid work Plaintiffs performed, which they agreed to compromise as part of the Settlement. ECF No. 326 at 20.

The Court therefore concludes that the Settlement resolves a bona fide dispute under the FLSA.

### B. Fair and Reasonable Settlement Agreement

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Even assuming the larger potential recovery estimated by Plaintiffs, the proposed settlement provides to each driver approximately one-third the amount he or she would have recovered at trial for the combination of overtime, liquidated damages, and interest – which is also an amount equivalent to 100 percent of the amount of unpaid overtime. California drivers will

11

also receive an equivalent percentage of their reimbursable expenses.

The parties contend that the settlement is fair and reasonable because Plaintiffs have a strong case but face the risk that they would recover nothing if the Ninth Circuit reverses the Court's rulings on successor liability or misclassification. ECF No. 326 at 21-22. Moreover, any recovery would be delayed by the lengthy six-Tranche process for determining individual damages through staged trials. *Id.* The parties also cite the extensive litigation and discovery completed during more than six years of proceedings to date, *id.* at 21, and that the Settlement was reached through multiple rounds of arm's-length negotiations supervised by a third-party mediator, *id.* at 23. Added to these factors are the fact that, because of difficulty in evaluating the Defendants' records, both sides necessarily engaged in a large degree of estimation.[9] Together, these factors support a finding that the Settlement is fair and reasonable.

As initially presented, however, the Settlement suffered from five potential deficiencies, each of which the parties have now cured either by amending their settlement agreement or by providing further information. Based on the additional information provided by the parties, the Court now concludes that this represents a fair and reasonable settlement amount in light of Plaintiffs' range of possible recovery.

First, the Settlement originally contemplated the administrative dismissal without prejudice of any plaintiff who did not respond to the settlement notice within fifty-one days. This procedure raised many problems. Among them was that in an FLSA collective action, once a plaintiff has opted in, no further action by him or her is required to receive the benefit of any settlement. "The

---

[9] The Court relies predominantly on Plaintiffs' estimates. Federal law is clear that "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the 'remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). When an employee proves that he has performed work for which he was improperly compensated "and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Thus, the fact that Defendants' records were incomplete or unclear cannot be used significantly to depress an appropriate settlement value.

12

1  FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'"
2  *Campbell*, 903 F.3d at 1104 (quoting *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215,
3  225 (3d Cir. 2016)). Once a plaintiff has opted in, "there is no statutory distinction between the
4  roles or nomenclature assigned to the original and opt-in plaintiffs." *Id.* As the facts have
5  developed, however, the Court need not be concerned about this provision. Because Plaintiffs'
6  counsel have made contact with every plaintiff save one, and that plaintiff no longer
7  communicates with counsel, the dismissal without prejudice provision of the Settlement will not
8  be triggered.

Second, even if the Court were somehow to find a second opt-in procedure to be appropriate, the proposed opt-in period was too brief. For initial opt-in periods for FLSA collective actions, "[t]imeframes of sixty to ninety days appear to have become the presumptive standard in this district." *Ramirez v. Ghilotti Bros. Inc.,* 941 F. Supp. 2d 1197 (N.D. Cal. 2013) (quoting *Sanchez v. Sephora USA, Inc.*, No. 11-03396-SBA, 2012 WL 2945753, at * 6 (N.D. Cal. July 18, 2012). Given that virtually all Plaintiffs responded within the proposed time frame, the Court can also dispense with this concern.

Third, the release originally proposed by the parties was too broad. Courts in this district have held that "[an] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224 at *4. Courts, therefore, "routinely reject FLSA settlements when the scope of the release goes beyond the claims asserted in the complaint." *Dunn*, 2016 WL 153266, at *5. As detailed above, the Settlement's release provision formerly covered "all claims that were pled in the *Flores* action," ECF No. 327-1 at 7, tracking the claims raised in the operative Fourth Amended Complaint, *see* FAC. However, the complaint and the release include numerous state-law claims brought on behalf of a putative class, *see, e.g.*, FAC ¶¶ 58, 102, for which Plaintiffs never sought certification. The parties have now amended the Release so that these claims are not released but are instead dismissed without prejudice.

Fourth, the Settlement originally provided that the Court, not the parties, would choose the *cy pres* recipient. ECF No. 327-1 at 17. It is not the Court's role to select a *cy pres*. As a panel of the First Circuit has stated, "having judges decide how to distribute cy pres awards both taxes

13

judicial resources and risks creating the appearance of judicial impropriety." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38 (1st Cir. 2012). Moreover, the parties, and not the Court, bear the burden to show "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citation omitted). A court cannot approve a settlement that "fail[s] to identify the *cy pres* recipients." *Dennis*, 697 F.3d at 867; *cf. id.* ("The difficulty here is that, by failing to identify the *cy pres* recipients, the parties have restricted our ability to undertake the searching inquiry that our precedent requires. The *cy pres* problem presented in this case is of the parties' own making, and encouraging multiple costly appeals by punting down the line our review of the settlement agreement is no solution.").

The parties have now cured this deficiency by selecting the Employee Rights Advocacy Institute for Law & Policy ("The Institute") in Oakland, California as the *cy pres* recipient in their settlement. ECF No. 337-1 at 17. As stated on that organization's website, its mission "is to advocate for employee rights by advancing equality and justice in the American workplace. . . . The Institute is the related charitable public interest organization of the National Employment Lawyers Association (NELA)." http://employeerightsadvocacy.org/about/ (last visited March 25, 2019). The Court is satisfied that an award to this *cy pres* recipient, if one results from the Settlement, would be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and would not benefit a group "too remote from the plaintiff class." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308, 1309 (9th Cir. 1990).

Finally, the Court was concerned that it could not measure the adequacy of the Settlement against the potential recovery in the case. Plaintiffs' counsel subsequently provided further information about the value of the claims, and also removed the state law claims from the release such that no compensation will be paid for those claims. As set forth above, these additional steps allowed the Court to determine that the class will receive from the Settlement approximately one-third of the amount it might have received had it prevailed at trial. On the facts of this case, the Court concludes this recovery is reasonable.

"[A] cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST,

14

2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). While this Court has approved FLSA settlements in which the settlement distribution was a larger percentage of the potential recovery, the amount paid here is in line with that approved in other cases. *See, e.g., Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) (approving settlement representing "57% of Defendant's maximum exposure analysis and 30% of Plaintiff's maximum damages analysis"); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement constituting approximately "25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial"), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). The Court likewise concludes here that given the risks to both sides, the Settlement is a fair and reasonable compromise.

## V.  ATTORNEYS' FEES AND COSTS

### 1.  Fees

The FLSA mandates an award of attorneys' fees when settling a collective action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. Nevada,* 56 F.3d 1048, 1051 (9th Cir. 1995).

The district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.,* 290 F. 3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward." *Id.* (internal citations and quotation marks omitted). On the other hand, "[w]here a settlement produces a common fund for the benefit of the entire class," courts may employ either the lodestar or the percentage-of-recovery method. *Id.* at 942. Twenty-

15

five percent of the fund is the benchmark for a reasonable fee award, although this may be adjusted to account for special circumstances. *Id.* Ultimately, the district court must exercise its discretion to reach a reasonable result. *Id.*

The Court first addresses counsel's claimed lodestar. After the parties stipulated to damages in the *Boconvi* action, Plaintiffs' counsel moved for an award of $2,289,085.50 in fees and $148,277.45 in costs. *Boconvi*, 17-cv-2623-JST, ECF No. 82 at 3. The Court reduced the fees by $36,398 to account for work unrelated to the *Boconvi* action, reduced fees for work in connection with the misclassification motion by $16,865.25, and then further reduced the remaining fees by 5 percent, resulting in a $2,124,031.14 award. *Id.* at 9. The Court awarded $136,575.60 in costs. *Id.*

Now, the parties have negotiated for a fee award to cover the entire litigation, including the Court's (presumably unpaid) prior award. Plaintiffs' counsel request $2,900,000 in attorneys' fees and costs, ECF No. 326 at 29, which includes an additional $639,393.26 above the Court's prior award to account for other fees and costs that were not subject to that motion, *id.* at 31.

According to counsel, their lodestar for fees for this entire action is $3,653,326.50, which they assert does not "ask for fees or costs the Court previously declined to award." ECF No. 327 ¶ 11. This is technically true, as their requested fee award is less than this total lodestar. Still, the Court observes that (1) the previously awarded fees of $2,124,031.14, when added to (2) the $615,625 in fees incurred but not requested in the prior motion and (3) the $739,253.35 in fees incurred since the Court's prior award, results in a total of $3,478,909.54. *See id.* This $165,054.36 difference corresponds precisely to the reductions the Court imposed on counsel's prior fee request. In other words, counsel's claimed lodestar, i.e., "the number of hours the prevailing party reasonably expended [multiplied] by a reasonable hourly rate," *In re Bluetooth*, 654 F.3d at 941 (citation omitted), includes hours and rates that the Court previously concluded were unreasonable, *see Boconvi*, 17-cv-2623-JST, ECF No. 82. Besides these prior reductions, the Court finds counsel's additional hours and rates claimed reasonable. Accordingly, the Court treats

counsel's lodestar as $3,512,970.04.[10]

The Court next considers whether $2,900,000 is a reasonable amount of fees. This represents 61 percent of the total amount paid by Defendants, far in excess of the 25 percent benchmark for common fund cases.[11] Nonetheless, the Court concludes that the award is reasonable under the facts of this case. First, the award is roughly 83 percent of counsel's lodestar. This contrasts with the majority of common fund settlements, in which the fees awarded are typically greater than, or a multiple of, counsel's lodestar. *See Vizcaino*, 290 F.3d at 1051 n.6 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (citation omitted)). Thus, this award would not "yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942.

Second, there is no indication that this is one of those cases where "the lodestar method create[d] incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee." *Vizcaino*, 290 F.3d at 1050 n.5. As the Court has previously remarked, "Defendants litigated this case in a way that was likely to produce high attorney fees." 17-cv-2623-JST, ECF No. 82 at 8. The Court concludes, as above, that Plaintiffs' counsel devoted a reasonable amount of compensable resources to the case.

Third, the Court is mindful that "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks and citation omitted). Thus, "[g]iven the nature of claims under the FLSA, it is

---

[10] The Court reduced the prior fee award by $36,398 for work unrelated to the *Boconvi* action. *See* 17-cv-2623-JST, ECF No. 82 at 4. However, this work is properly part of counsel's lodestar for the whole litigation.

[11] The Court acknowledges that the Settlement is not structured as a prototypical common fund, because changes to counsel's fees do not directly reduce Plaintiffs' recovery. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) ("[I]n a common fund case, 'the defendant typically pays a specific sum into the court, in exchange for a release of its liability. The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class.'" (quoting *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994)). But the Court finds it appropriate to "consider[] all payments that Defendants will make [pursuant to the Settlement] as coming out of one constructive common fund." *Otey*, 2014 WL 1477630, at *9.

17

not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case." *Holyfield v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991); *see also Flores v. City of San Gabriel*, No. CV1204884JGBJCGX, 2014 WL 12700907, at *3 (C.D. Cal. Sept. 26, 2014) ("[G]iven the importance of assuring worker's rights under the FLSA, even a limited damages award can justify a substantial fee." (alteration in original) (quoting *Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 212 (E.D.N.Y. 2014)); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1328-29 (M.D. Fla. 2001) (awarding $352,225.40 in fees for an FLSA recovery of less than $21,000); *cf. Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) ("The same is true in consumer protection cases: where the monetary recovery is generally small, requiring direct proportionality for attorney's fees would discourage vigorous enforcement of the consumer protection statutes.").

Finally, as discussed below, the costs incurred by counsel further support the $2,900,000 award.

### 2. Costs

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, Plaintiffs should file an itemized list of expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Counsel must also provide receipts to support their claimed expenses. *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2016 WL 3055643, at *10 (N.D. Cal. May 31, 2016), *appeal dismissed*, No. 16-16252, 2017 WL 4011879 (9th Cir. Feb. 22, 2017).

Here, Plaintiffs' counsel do not seek direct reimbursement of their costs, but they initially justified their $2,900,000 request in part on the ground that they have incurred $320,030.05[12] in

---

[12] As with their fees, counsel included $11,702.06 in costs that the Court previously found were unsubstantiated or duplicative. 17-cv-2623-JST, ECF No. 82 at 8-9. The Court therefore

18

litigation expenses. Because counsel failed to submit itemized expenses for the vast majority of those costs, and no supporting receipts for the remaining $36,879.53 incurred by Sommers Schwartz, P.C., the Court ordered counsel to provide additional supporting documentation. ECF No. 342.

In supplemental briefing, Sommers Schwartz provided receipts supporting $20,303.14 in expenses. ECF No. 343 ¶ 4. Johnson Becker, PLLC provided receipts for $89,309.23 in expenses, for a total of $109,612.37. ECF No. 344 ¶ 9. When added to the $136,575.60 that the Court previously awarded, counsel claim that they have incurred a total of $246,187.97 in compensable costs in this litigation. Having reviewed counsel's submissions, the Court concludes that these costs are reasonable. Accordingly, the Court considers them as further support for the request.[13]

In light of the $3,759,158.01 in fees and costs reasonably incurred, and for the reasons discussed above, the Court finds that a $2,900,000 award to Plaintiffs' counsel is reasonable.

## CONCLUSION

For the foregoing reasons, the Court grants the parties' motion for approval of their collective action settlement agreement.

**IT IS SO ORDERED.**

Dated: April 17, 2019

_____
JON S. TIGAR
United States District Judge

---

deducted that amount from the claimed total of $331,732.11 in determining the reasonableness of Plaintiffs' costs.

[13] The Court therefore need not consider why counsel's original motion repeatedly emphasized their entitlement to fees *and costs* if, as they now contend, their original "intent was to justify the additional $639,393.26 [above the Court's initial award] from Plaintiffs' submitted attorneys' fees only (not inclusive of costs)." ECF No. 344 ¶ 3-4; *compare, e.g.*, ECF No. 326 at 29 ("[T]he FLSA states that '[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow *a reasonable attorney's fee* to be paid by the defendant, *and costs* of the action." (emphasis in original) (quoting 29 U.S.C. § 216(b)); ECF No. 327 ¶ 11 ("Through the Joint Settlement, Plaintiffs will receive $2,900,000 in fees [and] costs, an almost 30% discount of their total fees and costs [of $3,985,058.61] incurred to litigate this case.").